**UNITED STATES of America**

**v.**

**Llewellyn Tucker FLIPPEN, Darrell Llewellyn Clough.**

**Crim. Nos. 87–00093–01–R, 87–00094–01–R.**

United States District Court, E.D. Virginia, Richmond Division.

Nov. 25, 1987.

Roger W. Frydrychowski, Asst. U.S. Atty., Richmond, Va., for U.S.

Elizabeth Dashiell, Michael Morchower, Richmond, Va., for Flippen.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

These matters came before the Court on defendants Clough and Flippen's motions to suppress evidence seized during searches of their respective houses and on the Government's motion *in limine*.[1]

The defendants argue that their Fourth Amendment rights have been violated because there was no probable cause to support the search warrants issued. Probable cause for these warrants rested on two grounds. Two items identified in the warrants were the subject of controlled mail deliveries. The controlled deliveries formed the probable cause for these two items included in the warrants. The statements made by Postal Inspector Gerald Dexter in his affidavit provided the probable cause that other items listed in the search warrants were to be found at the defendants' respective houses. After considering each of these grounds in turn, the Court concludes that there was insufficient probable cause to support a search warrant for the materials of the controlled deliveries but that there was sufficient probable cause to support a search warrant for the other items. The materials that were the subject of the controlled mail deliveries are admissible, nonetheless, under the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Although all the evidence which fits the warrants' description is admissible, without the benefit of hearing actual testimony and cross-examination, the Court is hard pressed to authoritatively delineate exactly

---

1. Dr. Flippen also presented several discovery motions which were subsequently resolved by the parties.

how the Government may use that evidence. Nonetheless, the Court has acceded to the Government's wish and tentatively ruled on the admissibility of certain evidence and the circumstances under which it can be used.

Flippen and Clough were both subjects of a government sting operation called "Project Looking Glass," designed to ensnare collectors and distributors of child pornography in violation of 18 U.S.C. § 2252. They were identified as possible subjects through different means.

Mr. Clough first came to the Postal Service's attention in October of 1985 after Fairfax County Police reported receiving a number of anonymous telephone complaints alleging that young boys were spending an inordinate amount of time near Clough's home. A subsequent investigation of Clough's police record revealed that he had been convicted of a sex offense against a child in Pasco County, Florida in April 1981.

Following this discovery, the Postal Service decided to include Clough in an undercover operation it had set up as a "pen pal" club whose members have a common interest in child pornography. Clough was sent a questionnaire designed to elicit specific information on his sexual preferences. He responded that he preferred hard-core pornography depicting homosexual, pre-teen homosexual or teen-age homosexual behavior. He also asserted that he was a collector of pornography.

Dr. Flippen was selected for "Project Looking Glass" because his name and address appeared on a copy of *Jeunes et Naturels* (*Young & Natural*), a magazine seized by postal inspectors that was considered "erotica for pedophiles." There had also been reports of anonymous phone calls to the police alleging that young boys had been visiting Dr. Flippen's apartment.[2]

After this, the experiences of Clough and Flippen were nearly identical. They were each mailed a letter of introduction from the Far Eastern Trading Company ("Far Eastern"), a company created by the Postal Service that promised to provide "child pornography." They each requested more information and were sent a catalog on April 30, 1987. On May 19, 1987, Far Eastern received a $114.95 check from Flippen for the purchase of the video tape *Pre–Teen Trio* and the magazine *Dutch Boys*. On June 26 the Service received an order from Clough for four magazines: *Skoleborne, Children–Love, Boys who Love Boys,* and *Dutch Boys.*

The agents for the Postal Service arranged for "controlled deliveries"—deliveries at a specific time and date—of these materials. On the mornings *prior* to these controlled deliveries, the agents sought and obtained search warrants for the homes of Flippen and Clough. The searches were to be executed once the contraband materials had arrived at the defendants' homes. The search warrants allowed for the seizure of the child pornography just delivered, "various other books, magazines, photographs, negatives, films, and/or video cassettes depicting minors engaged in sexually explicit conduct as defined in 18 U.S.C. 2256," and other things.

On June 10, 1987, Postal Inspector Gerald Dexter witnessed the mail courier deliver *Pre–Teen Trio* through the mail slot of Flippen's home. After Flippen was warned of the impending search and arrived on the scene, the Postal officials began their search. They seized over 530 video tapes and nearly 30 magazines which Flippen allowed them to view elsewhere.

On July 22, 1987, Postal officials watch Clough pick up his mail at a post office box and carry it back to his home. They executed the search warrant minutes after Clough arrived home. Both Clough and Flippen were indicted on violations of 18 U.S.C. § 2252(a)(2).

The defendants claim there was no probable cause at the time the search warrants were issued to believe that the items named in the search warrant—*Pre–Teen*

---

2. In the affidavit for the warrant, Postal Inspector Gerald Dexter suggested that these allegations had been the subject of anonymous phone calls to the police. At oral arguments, the Government indicated that a confidential police informant made these allegations.

*Trio* and *Dutch Boys*—were in their homes. The defendants argue that in determining whether to issue a search warrant, the magistrate must find information that would sufficiently convince a man of reasonable caution that the seizable items are located in the place to be searched. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Therefore, at the time the search warrant is issued, the items must presently be in the place to be search. This is the particularity that the Fourth Amendment requires. In the instant cases, the video tape and magazine were not at the place to be searched but were still in the Postal Service's possession at the time the warrant was issued.

Nevertheless, courts have often recognized the constitutionality of anticipatory search warrants. *United States v. Goff,* 681 F.2d 1238 (9th Cir.1982) (search warrant for person bound for district on non-stop jet); *United States v. Lowe,* 575 F.2d 1193 (6th Cir.1978) (search warrant for a house for controlled delivery of heroin); *United States v. Outland,* 476 F.2d 581 (6th Cir.1973) (search warrant for a house for controlled delivery of narcotics); *United States ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969) (search warrant for a house for controlled delivery of marijuana). The leading case addressing anticipatory searches in the context of child pornography is *United States v. Hale,* 784 F.2d 1465 (9th Cir.1986). In *Hale,* the defendant was also prosecuted under 18 U.S.C. § 2252(a)(2). He too contested the constitutionality of an anticipatory search warrant used in connection with a controlled delivery of pornographic materials. The Ninth Circuit held that "[w]hen evidence, however, is on a sure course to its destination, as in the mail, the prior issuance of a

warrant is permissable. *United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir.1982).

■ Magistrate Lowe premised his issuance of the search warrant for the materials of the controlled delivery on the holding in *Hale.* The Court rejects the reasoning and holding in *Hale* and finds that anticipatory searches in the context of child pornography are unconstitutional under the Fourth Amendment.[3] Since the validity of the search warrant for the controlled delivery materials turns on consideration of legal principles and not fact, the Court's review is *de novo.*

The Ninth Circuit in *Hale* cited to the *United States v. Goff,* 681 F.2d 1238 (9th Cir.1982) as authority for upholding anticipatory search warrants. In *Goff,* the defendant was suspected of dealing in cocaine. Once the defendant boarded a non-stop plane from Miami to Seattle, the Government secured a search warrant for the suspect. The court upheld the warrant even though the person to be searched was not yet in the district. *Id.* at 1239–40.

In this case, like the other cases upholding anticipatory search warrants, there were exigent circumstances. *Goff, Lowe, Outland* and *Skaff* involve delivery of drugs. The characteristics of drugs and child pornography differ greatly. Upon delivery drugs are used up or immediately distributed. If government officials are not permitted to seize the drug deliveries immediately, the evidence may disappear during the time spent securing a search warrant. On the contrary, child pornography is not used up or distributed upon delivery. Postal Inspector Gerald Dexter's affidavit used to secure the search warrants states that recipients of child pornography "rarely dispose of their collection of sexually-explicit material ... They almost

---

**3.** Defendant Clough also argues that even if *Hale* is applicable, the search warrant still lacks probable cause under the Ninth Circuit's opinion in *United States v. Hendricks,* 743 F.2d 653 (9th Cir.1984). In *Hendricks,* a package containing a suitcase full of narcotics was delivered to a place for the defendant to pick it up. The court ruled invalid an anticipatory search warrant of Hendricks' home because the contraband was not on a "sure course." As in *Hendricks,* there were no assurances at the time the

warrant was issued that Clough would pick the contraband up from his post office box and take to his house. By issuing the warrant before Clough picked up *Dutch Boys,* the magistrate in effect delegated the probable cause determination to the agent who observed Clough walk into his home. Hence, even if the decision in *Hale* was controlling, the anticipatory search warrant issued for seizing *Dutch Boys* would be invalid for lack of probable cause as a matter of law.

always maintain and possess their collection of materials in the privacy and security of their own homes." (Affidavits of Gerald Dexter for the search warrants of Clough's and Flippen's homes, p. 2) Therefore, unlike in drug situations, government officials have time to seek a search warrant through normal channels.[4] Allowing anticipatory search warrants in this area unnecessarily diminishes the Fourth Amendment right of the people to be secure from "unreasonable searches and seizures."

The United States argues that the magistrates explicitly found that probable cause existed at the time they signed the search warrants regardless of whether the anticipated delivery was made. If the magistrates did determine that there was sufficient probable cause, absent the controlled delivery, to establish that *Dutch Boys* was present at Clough's home and that *Pre-Teen Trio* was present at Flippen's home, then that determination is clearly erroneous. The affidavits for the search warrants state that *Dutch Boys* and *Pre-Teen Trio* were still in the Postal Service's possession at the time the search warrants were issued. (Affidavits of Gerald Dexter for the search warrants of Clough's and Flippen's homes, p. 7)

Therefore, those portions of the search warrants that permit the seizure of *Dutch Boys* and *Pre-Teen Trio* fail for want of probable cause. Anticipatory search warrants in the context of child pornography are impermissible, and there was no other evidence to support a finding that the contraband was currently present at the location to be searched when the warrant was issued. Nonetheless, the defendants' motions to suppress *Dutch Boys* and *Pre-Teen Trio* are denied. Although there was no probable cause to support their seizure, the Postal agents relied in good faith on the validity of the search warrants. Excluding the evidence would not further the purposes of the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Having addressed those portions of the search warrants that permitted the seizure of *Dutch Boys* and *Pre-Teen Trio*, the Court turns to other provisions of the warrants. These provisions allowed for the seizure of "various other books, magazines, photographs, negatives, films, and/or video cassettes depicting minor children engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256" as well as any correspondence concerning offers to buy or trade child pornography, bookkeeping records of purchases of child pornography, address books containing sources of child pornography, and correspondence with other people interested in child pornography. The search warrant for Flippen's home also sought camera equipment, diaries recording child sexual partners, an address book of child sexual partners, and information regarding safe deposit boxes.

Clough and Flippen seek to suppress evidence seized under these portions of the search warrants. They claim there was no probable cause to support the broad searches permitted by the warrants. The Court disagrees. There were sufficient facts in the affidavit to support findings of probable cause and the search warrants that issued.

The affidavit supporting the search warrant of Clough's home notes Clough's prior conviction of sex offense involving a child; his expressed fondness for pornography involving pre-teens in response to a questionnaire; and the efforts he went through to order pornography from the Postal Service's Far Eastern Trading Company. Similarly, the affidavit in support of the search warrant for Flippen's home points out that Flippen's name appeared on a copy of *Young and Natural*, a magazine that a Postal Service attorney found to be "erotica for pedophiles"; that Flippen requested more information on how to order child pornography; and that he did order child pornography.

**4.** Another alternative is the use of telephonic warrants. If the Postal agents become aware of information that led them to believe that child pornography was in the house, they could inform the magistrate so that the magistrate and not the agent could make the determination of probable cause. See *United States v. Hendricks*, 743 F.2d 653, 655, n. 2 (9th Cir.1984).

In reviewing a magistrate's determination of probable cause, the district court should pay it great deference. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). The probable cause determination should be interpreted in a common sense, and not a hypertechnical, manner. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). A reviewing court should only reverse the finding of the magistrate where either (1) statements of knowing or reckless falsity were made; (2) the magistrate abandoned his neutral and detached function; or (3) there is no substantial basis for determining the existence of probable cause—meaning that the warrant was invalid because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances. *Leon*, 468 U.S. at 913–15, 104 S.Ct. at 3415–16.

Under these guidelines, the Court cannot say that the magistrates' findings of probable cause are erroneous. The magistrates' probable cause determination must be upheld.

Flippen has also argued that the breadth of the warrant concerning the seizure of magazines, books, films and video cassettes raises First Amendment concerns. This argument fails. The language of the warrant limiting the search to materials "depicting minor children engaged in sexually explicit conduct" sufficiently circumscribed the Postal agents' discretion at the time of the seizure. *United States v. Hurt*, 808 F.2d 707 (9th Cir.1987). *See also, New York v. Ferber*, 458 U.S. 747, 763, 102 S.Ct. 3348, 3357, 73 L.Ed.2d 113 (1982) (Child pornography is not presumptively protected by the First Amendment; it is almost completely outside its protection)

Consequently, the defendants' suppression motions are denied. There was probable cause to support the search warrant for items other than those included in the control delivery. Nonetheless, only evidence seized that fits the description in the warrants is admissible. The various other books, magazines, and video tapes must depict *minors* engaged in *sexually explicit*

conduct. The Court also notes that merely because Flippen voluntarily allowed the seizure of magazines and video tapes, he did not waive his right to have the materials suppressed as evidence. He only waived his right to have the materials viewed at his own home.

Although the evidence is admissible, the Court must still make rulings on its probative value. In *United States v. Flippen*, the Government seeks a preliminary ruling on the use of evidence at trial. It is difficult to make such a ruling without the benefit of hearing witnesses' testimony, the cross-examination of witnesses and the defendant's testimony, if he should chose to take the stand. What is said, or not said, will dictate what evidence is admissible. Accordingly, the Court can make only tentative rulings, subject to change according to the flow of evidence at the trial.

All correspondence between Flippen and Far Eastern is admissible in the Government's case in chief. This includes the envelope (Gov. Ex. 1) addressed to "L.T. Flippen" which contained the initial mailing from Far Eastern; the top half portion (Gov. Ex. 1A) of the initial mailing; the envelope (Gov. Ex. 2) addressed to Far Eastern from the defendant; the bottom portion (Gov. Ex. 2A) of the initial mailing; the manila envelope (Gov. Ex. 3) post marked Christainsted, Virgin Islands which contained the Far Eastern catalog; the catalog itself (Gov. Ex. 3A); the letters (Gov. Exs. 3B, 3C) accompanying the catalog; the envelope (Gov. Ex. 4) post marked May 11, 1987, Richmond, Virginia to Far Eastern which contained Gov. Exs. 4A–4D; a postal money order (Gov. Ex. 4A) in the amount of $114.95 from Flippen payable to Far Eastern; the cut-out portion (Gov. Ex. 4B) of Gov. Ex. 3 sent by the defendant to note correct address; typed corrected address (Gov. Ex. 4C); 3 x 5 card with typed order (Gov. Ex. 4D) for two items from Far Eastern; duplicate (Gov. Ex. 5) of Gov. Ex. 4D seized at Dr. Flippen's home; the manila envelope (Gov. Ex. 6) post marked Virgin Islands, June 8, 1987 sent to Flippen; and the video tape *Pre–Teen Trio* (Gov. Ex. 7)

Other evidence offered by the Government may be more prejudicial than proba-

tive under Rule 404(b), Fed.R.Evid., but may be admissible at trial. For example, if through defendant's cross examination or presentation of evidence, Flippen suggests a defense of mistake or curiosity, the following evidence may be used in either rebuttal or as part of the Government's case in chief: the magazine "Beautiful Boys," (Gov. Ex. 30) volume one, number one; the photographs contained in the envelope addressed to the defendant from "Todd Granger ... Los Angeles, California" (Gov. Ex. 31); the first segment of the second video tape (Gov. Ex. 35) which depicts a "brother" and "sister" engaged in masturbation and fellatio; and the fourth segment of the same tape (Gov. Ex. 35) in which an apparently adolescent male masturbates in front of a car. These exhibits depict minors engaged in sexually explicit acts defined in 18 U.S.C. § 2256.

All other evidence offered by the Government is probably inadmissible. Much of it falls outside the scope of the search warrant. For example, the video tape marked as Government exhibit 34 does depict minors, but they are not engaged in sexually explicit conduct as required by the statute and the warrant. Indeed, many of the scenes from this montage are taken from commercially released, R–rated movies and from television docu-dramas. Similarly Gov. Exs. 13A, 15–27 are magazines that contain pictures of nude children, often playing at nude beaches or nude resorts, but the children are not engaged in any sexual activities. Conversely, other exhibits contain depictions of explicit sexual behavior, but the actors are not minors (see Gov. Ex. 32 and segments of the video tape marked Gov. Ex. 35). And the remaining evidence offered by the Government has little probative value.

Again, these determinations are subject to change as strategies and evidence evolve at trial.

Let the Clerk send a copy of this memorandum opinion to all counsel of record.