**STATE of Missouri, Plaintiff–Appellant,**

v.

**Martin Roy WEBB, Defendant– Respondent.**

**No. 17600.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 1992.

Motion for Transfer to Supreme
Court Denied Feb. 20, 1992.

---

5. As earlier indicated, it is not clear in the record why the assignee would sell vehicles not owned by the assignor.

Thomas E. Mountjoy, Pros. Atty., Pat J. Merriman, Asst. Pros. Atty., Springfield, for plaintiff-appellant.

Dee Wampler, Springfield, for defendant-respondent.

MONTGOMERY, Judge.

Defendant's motion to suppress evidence seized by virtue of a search warrant was sustained by the trial court. The State appeals.[1] Two points are presented for our review. Because we find the search warrant was properly issued we do not discuss the State's second point.

The State contends the application for the search warrant was sufficient to sustain the finding of probable cause made by the issuing judge. Defendant argues that (1) the issuing judge relied on oral information to issue the search warrant, (2) the "informant" was not shown to be reliable, and (3) the search warrant was anticipatory in nature.

The facts developed at a motion to suppress hearing are as follows: Federal Express employees in Springfield, Missouri, discovered a shipment of cocaine in transit. Springfield Police Detective Lewis began working on the case and arrested Stephen Kerr for possession of approximately two ounces of cocaine. We assume the Federal Express package was addressed to Kerr, and he was arrested when the package was received by him. Kerr agreed to cooperate with the police by selling the cocaine to the intended buyers. He then telephoned Defendant and stated, "... I got my package, and I thought if you wanted I would drop on by." Defendant gave Kerr directions to his home. The police recorded this call and a transcript of the conversation was received in evidence. Officers Hamilton and Fite strip searched Kerr and searched his vehicle just before following him to Defendant's home. While Kerr and Officers

---

1. The State appeals pursuant to § 547.200.1,   RSMo 1986.

Hamilton and Fite proceeded to Defendant's home, Detective Lewis prepared a search warrant application and proceeded to the home of Associate Circuit Judge Dan Conklin to obtain a search warrant to search Defendant's premises.

Because the drug sale had not yet occurred, Detective Lewis waited at the home of Judge Conklin to receive further information from Officers Hamilton and Fite. While waiting, Detective Lewis was soon notified by Officer Hamilton, via radio, that Kerr made the drug sale to Defendant. Upon receiving that information Detective Lewis proceeded to sign the search warrant application and present it to Judge Conklin.

Detective Lewis testified Judge Conklin asked him some questions and he responded. Judge Conklin testified he asked Detective Lewis why he was there, and he stated he came for a search warrant but some matters in the application had not yet occurred. Detective Lewis responded he would submit the application when everything was complete. Judge Conklin further testified he asked Detective Lewis about no facts contained in the application, and no information was given to determine probable cause except the facts within the four corners of the application. He finally testified, "I'm acutely aware of the necessity that the information be totally within the four corners of the application and not any parole [sic] testimony from the officer."

Judge Conklin issued the search warrant which was served on Defendant. The officers failed to recover any cocaine but they did seize from Defendant the "baggie" which contained the cocaine. One thousand two hundred fifty dollars in cash paid to Kerr by Defendant for the cocaine was seized immediately after Kerr left Defendant's home. Other types of drugs and drug paraphernalia were seized at Defendant's premises.

Prior to entering Defendant's home the police fitted Kerr with a recording device. While Kerr consummated the drug sale with Defendant, Officers Hamilton and Fite overheard and recorded the entire transaction from a nearby location. From this "eavesdropping" the officers learned that the sale was completed. At that point Detective Lewis was notified to present the search warrant application. A transcript of the drug sale transaction between Kerr and Defendant was received into evidence.

The Application for Search Warrant was subscribed and sworn to by Detective Lewis. The items sought to be searched for and seized were "[c]ocaine, narcotic paraphernalia, cash from narcotic sales, narcotic business records and all other illegally kept controlled substances." The person, place or thing to be searched was described as "3214 W. Edwards, Greene County, Missouri. Residence is a single family. Search to include all out buildings on the above property, all persons found in the residence and vehicles on the property."

The application stated that Lewis had probable cause to believe that the objects sought were now located in the described place, based on the following facts:

On April 9, 1988, Stephen Kerr was arrested for Felony Possession of Cocaine. He was arrested picking up a Federal Express package at Federal Express that contained 2 ounces of cocaine. When interviewed, Kerr told me that prior to the arrest, he had talked with Marty Webb and that the cocaine was going to be delivered to Webb. Kerr stated he expected to receive $2,000.00 in cash from Webb.

On April 9, 1988, 16:15 hours, Kerr talked to Webb by telephone. Webb told Kerr he lived at 3214 W. Edwards and for him to come on out to the house. On April 9, 1988, Kerr went to Webb's house at 3214 W. Edwards, *where he sold Kerr the cocaine* that he had picked up at Federal Express earlier that day. Based on the above information, I believe cocaine is being kept at 3214 W. Edwards. (emphasis added)

The portion of the application stating, "... where he sold Kerr the cocaine ..." is obviously incorrect. A typographical error likely exists when Detective Lewis states the cocaine was sold to Kerr. Clearly, the cocaine was sold to Defendant and the application reasonably supports that construction. "In judging probable cause issuing

magistrates are not to be confined by limitations or by restrictions on the use of their common sense." *State v. Pennington*, 642 S.W.2d 646, 648 (Mo.1982).

The trial court suppressed the evidence seized based upon the following finding:

The Court does not believe that the issuing Judge could consider that information that's contained in that paragraph [the last paragraph of the application] because he knew that it was false. And I say that he knew it was false in that, number one, even if you put the interpretation on it that the State would like to put on it, [Kerr sold cocaine to Webb, not to himself] it purports to be information on the personal knowledge of the party who signed the application. It does not purport to be information that he has. The Judge knew that those events had not occurred at the time that the officer appeared at the Judge's house and therefore the officer necessarily could not have been present when there was a sale of cocaine ... [s]o that the personal knowledge of the affiant necessarily did not exist and the Judge knew that it was not true so he could not have relied on it.

We review this issue pursuant to the rules described in *State v. Berry*, 801 S.W.2d 64 (Mo. banc 1990):

The Fourth Amendment guarantees that "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A firm definition of the phrase "probable cause" has eluded the courts.... The most recent of the United States Supreme Court's major efforts to define "probable cause," *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), tells us that probable cause is "a fair probability that contraband or evidence of a crime will be found." ...

While the meaning of probable cause is a legal issue; its existence in a particular case is a question of fact. Thus, appellate review is not de novo. We give great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and we reverse only if that determination is clearly erroneous.

*Id.* at 66.

As *Berry* requires, we must review the initial determination of probable cause made by Judge Conklin at the time he issued the search warrant. Unless his determination was clearly erroneous, we must uphold the seizure of evidence pursuant to the search warrant.

*Berry*, like this case, involved a search warrant for a residence. An anonymous caller informed a deputy sheriff that the caller had seen several bags of a green leafy substance believed to be marijuana in the bedroom of the suspects' mobile home the preceding day. The caller described the features and location of the mobile home and described a pickup truck parked there. The deputy drove to the residence and verified the description supplied by the caller. The deputy prepared an affidavit reciting the above information. A judge issued a search warrant for the suspects' residence on the basis of the deputy's affidavit. Marijuana was seized pursuant to the search warrant and the suspects were charged with marijuana possession. They filed motions to suppress contending the deputy's affidavit did not supply "sufficient probable cause to support the issuance of the search warrant." *Id.* at 65.

The trial court ruled there was insufficient probable cause for the warrant and the state appealed. Our Supreme Court reversed the trial court noting the information supplied by the anonymous caller "bears the unmistakable marks of first-hand observation." *Id.* at 67. The Court stated the deputy "verified the accuracy of the only information he was capable of confirming: the location, vehicle and exterior description." *Id.* The Court held this verification gave the deputy reasonable grounds to believe the remaining unverified information from the caller (that the suspects' residence contained marijuana) was likewise true. *Id.* The Court declared a neutral and detached magistrate could have made a practical, commonsense deci-

sion that there existed a fair probability marijuana would be found in the suspects' residence and a search warrant should issue. *Id.*

■ The instant case differs from *Berry* in that here the person who supplied the initial information was not anonymous, and his contacts with Defendant were either observed or overheard by officers. The information supplied by Detective Lewis results from firsthand observation except the actual sale. He observed the cocaine in the Federal Express package, arrested Kerr and listened to him call Defendant. He heard Defendant invite Kerr to his home impliedly to purchase the cocaine. He knew Kerr was fitted with a recording device that would allow his fellow officers to eavesdrop on the proposed drug purchase. He received firsthand information from Officer Hamilton who listened to the entire drug purchase transaction in Defendant's home. Detective Lewis and his fellow officers confirmed the accuracy of all information in the application by firsthand observation and listening directly to Defendant himself. This verification unquestionably gave Detective Lewis reasonable grounds to believe Defendant's home contained cocaine. All the facts contained in the application came from the investigation developed by Detective Lewis and his fellow officers. No relevant facts in the affidavit came solely from information supplied by Kerr. As a result, we find absolutely no basis for the trial court to conclude Judge Conklin knew any information in the application was false.

■ Perhaps the trial court was concerned, as is Defendant, that the preparation of the application before the sale occurred somehow flawed the document. Granted, this approach appears to "get the cart before the horse." However, the unique circumstances present here justify the approach taken by Detective Lewis. At the time he prepared the affidavit he knew Kerr had an appointment to sell Defendant cocaine. He knew Kerr would be wearing a recording device which would transmit details of the sale to his fellow officers. He knew Officer Hamilton would

immediately radio him when the sale was made. At that point in time the facts recited in the application would either be true or false. If true, and only then, the application would be presented to Judge Conklin. It is by virtue of such advanced electronics and communication that law enforcement officers can effectively continue to battle drug traffic. We have no quarrel here with the use of such equipment which allowed an immediate response to an unquestioned drug sale. The facts are clear that all activities described in the application had occurred when Judge Conklin read it.

Defendant cites us to only one case which purportedly condemns an anticipatory search warrant. That case, *United States v. Flippen,* 674 F.Supp. 536 (E.D.Va.1987), dealt only with the seizure under a search warrant of child pornography items, not drugs. A vast difference exists between an anticipatory search warrant dealing with drugs and one dealing with child pornography. As the court stated:

> The characteristics of drugs and child pornography differ greatly. Upon delivery drugs are used up or immediately distributed. If government officials are not permitted to seize the drug deliveries immediately, the evidence may disappear during the time spent securing a search warrant. On the contrary, child pornography is not used up or distributed upon delivery.

*Id.* at 539.

Even if we found the search warrant here anticipatory in nature, which we do not, *Flippen* does not support Defendant's position. That court further stated: "Nevertheless, courts have often recognized the constitutionality of anticipatory search warrants." *Id.*, citing *United States v. Goff,* 681 F.2d 1238 (9th Cir.1982) (search warrant for person bound for district on non-stop jet); *United States v. Lowe,* 575 F.2d 1193 (6th Cir.1978) (search warrant for a house for controlled delivery of heroin); *United States v. Outland,* 476 F.2d 581 (6th Cir.1973) (search warrant for a house for controlled delivery of narcotics); *United States ex rel. Beal v. Skaff,*

418 F.2d 430 (7th Cir.1969) (search warrant for a house for controlled delivery of marijuana).

■ Defendant asserts that Kerr was not a reliable informant and his reliability "must be stated," citing *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). *Draper* does not aid Defendant because it dealt with the question of probable cause for an arrest without a warrant. The arrest was based upon information supplied by an informant who had proved reliable in the past. We do not view the outcome of this case as a test of the reliability of Kerr.

Regardless, the answer to Defendant's assertion is found in *Berry, supra.*

> The rigid, two-pronged, basis of knowledge/reliability test of *Auguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining probable cause is no longer the law. Instead, the neutral magistrate must determine probable cause from the totality of the circumstances. *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The neutral magistrate must make a "practical, commonsense decision whether ... there is a fair probability that contraband or evidence of a crime will be found." *Id.* at 238, 103 S.Ct. at 2332. That decision is made from all the circumstances set out in the affidavit, including the "basis of knowledge" and "veracity" of persons providing hearsay information. *Id.*

801 S.W.2d at 66.

Here the "basis of knowledge" of facts set forth in the search warrant application came from firsthand observations and conversations heard by the officers involved. The "veracity" of Kerr's information was not necessary to substantiate. The officers either observed or overheard all of the facts, relating to Defendant, recited in the application.

■ The fact that Detective Lewis did not personally overhear the drug sale transaction is not fatal. His fellow officers, engaged in a common investigation, certainly overheard Defendant buy cocaine from Kerr, and that information was immediately relayed to Detective Lewis. In *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965), it was held that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." Another case with very similar facts to the instant case is *Chin Kay v. United States*, 311 F.2d 317 (9th Cir.1962). There, FBI Agent Feldman applied for a search warrant reciting information partially supplied by FBI Agent Fahey. The latter placed transmitting devices on a confidential informant and observed him enter defendant's home. Fahey overheard the informant discuss a drug sale. The informant had been searched prior to entering defendant's home and, upon leaving, drugs were found on the informant. The Court said:

> Probable cause exists where the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

*Id.* at 320.

The distinction between the application for a search warrant in *Chin Kay* and the application here is that Lewis only stated ultimate facts—Kerr sold Webb cocaine. He did not describe the involvement of his fellow officers. We do not believe this distinction causes the application to be defective because the facts of the drug sale were within the personal knowledge of Detective Lewis when Officer Hamilton radioed him. Under the circumstances of the case we see no reason why personal knowledge of one fellow officer cannot be imputed to the officer making the application. Such information from fellow officers would warrant the belief in Detective Lewis that an offense was committed based on his personal knowledge from all the circumstances existing on April 9, 1988. Our analysis on this point is supported by *State v. Morris*, 662 S.W.2d 884 (Mo.App.1983).

There, we were required to determine if probable cause existed for a warrantless arrest. We said:

> Probable cause is to be determined upon the objective facts available for consideration by the agencies or officers participating in the arrest; otherwise each individual officer would have to be fully briefed or informed of all the essential factors in each case before proceeding to make an arrest upon probable cause. In the operation of an investigative or police agency, the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause; the arresting officer himself need not possess all of the available information.

*Id.* at 893 (citation omitted).

Here, the collective knowledge of Detective Lewis and his fellow officers was a sufficient basis for the facts stated in the application. Detective Lewis was not required to personally overhear the drug sale transaction because that was done by another officer.

■ Finally, Defendant contends the application of Detective Lewis was defective because it was not in writing. He implies that because Detective Lewis answered questions by Judge Conklin the application was based on oral testimony. Such argument is opposite of the testimony of those individuals. Both parties testified no information was discussed except that contained within the four corners of the application. Judge Conklin testified he was acutely aware of the necessity that all information in determining probable cause be contained within the application and not upon oral testimony.

Section 542.276 2., RSMo 1986, sets forth the requirements for an application for the issuance of a search warrant. One of those requirements is that the application shall "(1) Be in writing...." Another requirement is "3. ... Oral testimony shall not be considered." We find that all the information sufficient to find probable cause was contained within the application in writing submitted by Detective Lewis, and no parol testimony was given.

As we stated in *State v. Phillips,* 532 S.W.2d 533, 535 (Mo.App.1976): "In judging of the validity of a search warrant, it is elementary that a reviewing court should consider only the information brought to the attention of the issuing magistrate in the form required by Rule 33.01." [2] We have considered the written information brought to the attention of Judge Conklin and find the search warrant properly issued.

Accordingly, we hold the order suppressing evidence seized under the authority of the search warrant requires reversal. The order is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

FLANIGAN, C.J., and SHRUM, P.J., concur.

---

2. The provisions of former Rule 33—Searches and Seizures—are now governed by Chapter 542, RSMo 1986.