**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Thomas . E. JACKSON,
Defendant–Appellant.**

**No. 53563.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1988.

Timothy J. Walk, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Chief Judge.

After a jury trial, defendant was convicted of voluntary manslaughter in violation of Section 565.023, RSMo 1986, and sentenced to ten years imprisonment. We affirm.

In the early morning hours of November 14, 1986, Jennings police were dispatched to the scene of a reported shooting. Officer Morton was the first to arrive on the scene. He discovered a distraught woman standing in front of the residence near the body of a man. When Morton questioned the woman regarding the identity of the person who had shot the victim, she replied only, "Inside."

A second officer arrived and informed Morton that the dispatcher had the suspect on the telephone. The second officer tended to the victim and the woman; Morton went after the suspect. Before entering the residence, Morton peered inside. Seeing no weapons, Morton entered. The defendant began a rambling discourse about his shooting of the victim. While the defendant rambled on, Morton attempted to get "the gist of what he was saying" [1] and visually searched for the weapon. He wanted to ensure that the suspect was no longer armed for his own safety; therefore, when he was unable to locate the weapon, he asked the defendant, "Where's the gun?" Defendant replied that it was in the bedroom. After a second police officer entered the residence, the gun was secured and the defendant was advised of his *Miranda* rights. Defendant indicated that he understood his rights, and confessed to the shooting.

The police officers immediately transferred him to the station. Upon arrival, defendant was reread his rights and signed an acknowledgement card. He confessed to the homicide and agreed to videotape his statement. Once again, he was read his *Miranda* rights. After indicating that he understood, he gave the same incriminating statement on videotape.

Defendant filed pre-trial motions to suppress evidence and statements which the trial court denied. Defendant vaguely contends this was error because the statements and the subsequent seizure of evidence occurred prior to *Miranda* warnings in violation of defendant's right to due process and equal protection.

In *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Court announced a public safety exception to the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The police were chasing an armed rape suspect through a supermarket. The officer who reached the suspect first did not see the weapon. He frisked and handcuffed the suspect, and asked him where the gun was. The suspect answered and the officer located the gun in an empty carton. At this point, the suspect was read his *Miranda* rights. The court held "that on these facts there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence and that the availability of that exception does not depend upon the motivation of the individual officers involved." *Quarles*, 104 S.Ct. at 2631.

The court added, "We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 2633. Our research has found no Missouri case in which the question concerning the location of the weapon was asked solely to protect the police officer on the scene. As a general rule, these situations occur on public streets or in the presence of bystanders. We do not believe, however, that *Quarles* is limited to those situations since the *Quarles* opinion refers to "[the police officers] own safety *or* the safety of the public...." *Id.* (Emphasis added); *accord People v. Waiters*, 121 A.D. 2d 414, 502 N.Y.S.2d 530 (1986). The officer was merely trying to determine wheth-

1. Defendant admitted and the transcript bears witness to the fact that his speech is difficult to understand.

er the suspect was unarmed. The evidence was admissible under the public safety exception announced in *Quarles*.

Since Morton obtained the gun and the statements surrounding its location under the public safety exception, the statements made at the police station after *Miranda* warnings were administered were not tainted. *See Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

■ The defendant does not argue that the warrantless search for and seizure of the gun violated his fourth amendment right to be free from an unreasonable search. Nevertheless, the state responds to the issue by discussing the exigent circumstances exception to the warrant requirement and the inevitable discovery doctrine. We find the inevitable discovery doctrine applicable.

In *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court explained the rationale behind the doctrine.

> Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial.... Suppression, in these circumstances, would do nothing whatever to promote the integrity of the trial process, but would inflict a wholly unacceptable burden on the administration of criminal justice.

*Nix*, 104 S.Ct. at 2510. We applied the doctrine in a factual situation similar to this case in *State v. Byrne*, 595 S.W.2d 301 (Mo.App.1979). In *Byrne* we explained that the accused subject of an illegal search is entitled to be as well off as if the law enforcement authority had not unlawfully seized the evidence, but he is not entitled to be any better off. *Id.* at 305 (citation omitted).

In this case, the police officers were investigating a homicide. A search of the scene with a warrant was inevitable and would have resulted in the seizure of the weapon which was found in plain view on the top of the dresser in the bedroom. Because the evidence would have been discovered, its suppression under the circumstances would have added nothing to the

trial's integrity and its admission was not error.

The judgment is affirmed.

CARL R. GAERTNER, J., and SIMEONE, Senior Judge, concur.

