**STATE of Missouri, Appellant,**

v.

**Robert TRENTER, Respondent,**

**Penny Bennett, Respondent.**

**No. WD 60591.**

Missouri Court of Appeals, Western District.

Aug. 20, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun Mackelprang, Assistant Attorney General, Jefferson City, for appellant.

Milton Eugene Harper, Columbia, Kenneth Stanley Clay, Columbia, for respondent.

RONALD R. HOLLIGER, Judge.

Respondents are charged with possession of a controlled substance with intent to distribute, § 195.211, RSMo 2000. The State has filed an interlocutory appeal of the circuit court's order granting respondents' motion to suppress evidence. Section 547.200. The issue is the validity of a search warrant. The motion to suppress alleged that the affidavit supporting the warrant contained false information. Under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), if the defendant establishes beyond a preponderance of the evidence the allegation of perjury or reckless disregard for the truth, and the affidavit's content after setting the false material aside is insufficient to establish probable cause, the search warrant is declared void and the fruits of the search must be excluded. *Id.* at 156. *State v. Bue*, 985 S.W.2d 386, 393 (Mo.App.1999). We affirm because respondents established by a preponderance of the evidence that the affidavit contained knowingly false statements, the State has waived its argument that the motion to suppress was inadequate to trigger a *Franks* hearing, the affidavit absent the false material did not support probable cause, and the good faith exception to the exclusionary rule does not apply.

**Facts**

The search warrant in question was issued on April 22, 1999. The previous day, Corporal Troy Blunt of the Missouri Highway Patrol began tracking a Fed Ex package after a dog alerted on it. The package was en route to Sedalia. Highway Patrol officers intercepted the package and twice attempted a controlled delivery to the address listed on the package. After these attempts failed, the officers obtained a search warrant for the package and confirmed that it contained a blue cooler full of marijuana. Officers went to the house and spoke with Debbie Doster, who told them that the package was intended for her daughter, Sherry Bevier. Doster contacted Sherry Bevier, also known as Sherry Pauly, who came and picked up the package. Officers followed her and stopped her, placing her under arrest. Bevier agreed to complete the delivery to Robert Trenter.

On April 22, the case was turned over to Officer Sidney Conklin of the Missouri State Highway Patrol. Blunt, however, assumed responsibility for obtaining a warrant for Trenter's property in Sullivan County.[1]

Officers Norman and Fox accompanied Bevier to her house in Kirksville. Bevier had agreed to contact Trenter from her house and arrange to deliver the marijuana. Bevier apparently made several telephone calls, which the officers recorded. At least one of the telephone conversations purported to be with Trenter. The officers were unable to listen to the entire conversation contemporaneously, although they heard Bevier's side of it. The officers did not confirm the phone number that Bevier dialed. They relied on Bevier's representation in concluding that she was speaking with Trenter. None of the officers had worked with Bevier before, and none of them had any indication as to her reliability or veracity. Bevier told the officers that Trenter had agreed to accept delivery of the marijuana at his Route 3 property, rather than his Route 1 property.

---

**1.** Two search warrants were actually issued. The first one issued for Trenter's Route 1 property. Based on what Bevier told Norman and Fox about a telephone conversation, the first warrant was discarded and the prosecutor applied for a warrant for Trenter's Route 3 property.

The prosecutor applied for the search warrant based on Blunt's affidavit. In the affidavit, Blunt swore that he had probable cause to believe that various items of contraband were currently on the Route 3 property. These items included methamphetamine, controlled substances, drug paraphernalia, items associated with methamphetamine manufacturing, records associated with controlled substance distribution, weapons and firearms used to protect controlled substances, equipment used to deter law enforcement, and cash associated with sale of controlled substances. The affidavit also described the history of the Fed Ex package, the attempted controlled delivery, and Bevier's agreement to cooperate in the delivery. The affidavit then stated:

K. On April 22, 1999 Mrs. Pauly (Bevier) contacted Robert Trenter of Milan, Missouri and requested to meet him at his residence located on Rt. # (sic) Green City, Missouri. Mr. Trenter is a known trafficker of narcotics in the Sullivan County area, he has a prior federal conviction for possession of a controlled substance with the intent to distribute along with a State conviction of possession of a controlled substance. Mr. Trenter is to take delivery of the marijuana and pay Mrs. Pauly one hundred dollars for every pound of marijuana delivered to him.

L. Your affiant is applying for a(sic) anticipatory search warrant based on the information discribed (sic) above. This affiant will not serve this search warrant if Mr. Trenter does not agree to accept the package.

The warrant itself simply instructed law enforcement to search the premises and made no reference to a requirement that Trenter agree to accept the package.

Officers drove with Bevier to Trenter's Route 3 residence and waited about 600 yards away while she approached the house. Officers saw Bevier get out of her car and meet a white male who came out of a nearby shed. They saw the man carry the Fed Ex package into a garage attached to the house. Bevier went into the garage briefly, then returned to her car and drove away. Conklin testified that he passed Bevier on his way up the driveway and that she said it went "all right." Officers then approached the house and searched it. The officers entered the house through the garage. They did not knock, although they announced their presence. The search of the Route 3 residence turned up various documents, a package of marijuana from inside a grandfather clock, and approximately $10,000. During the search, respondent Bennett was seated at a table in the garage during at least part of the search. At one point she requested medication for an asthma attack. Based on Bennett's consent, officers searched the Route 1 residence and seized marijuana and paraphernalia, a case of watches, a box of knives, ammunition, and approximately 47 other weapons.

Officers Blunt, Norman, Logston, Balmer, Brown, and Conklin testified at the *Franks'* hearing. Judge Sayre, who issued the search warrant, was also called as a witness. Blunt testified that he did not have probable cause to believe that any contraband beyond the contents of the Fed–Ex package were located at Trenter's house. Blunt indicated that the probable cause for the rest of the contraband listed in his affidavit would come as a result of the delivery (or Trenter's agreement to accept delivery) of the Fed–Ex package. Blunt also testified that he based the Statement about Bevier's conversation with Trenter on information Conklin gave him.

Conklin testified that Fox and Norman told him that Bevier told them that she

had spoken with Trenter and that he had agreed to accept delivery. He also testified that at some point, he and Blunt learned from someone that Trenter had agreed to pay $100 per pound for the marijuana.

Judge Sayre's actual testimony did not go any farther than that he had signed the search warrants. The prosecutor attempted to ask him about his reasons for signing the warrant, but the court sustained the objection to this testimony. The prosecutor made an offer of proof, and Judge Sayre explained that Blunt orally told him that Trenter had actually already agreed to accept delivery of the Fed–Ex package. He also explained that he considered the present tense language in the affidavit to be merely boilerplate. He stated that he was not confused by this language, and he did not think it actually meant that Blunt already had probable cause to believe that contraband was present.

The circuit court sustained the motion to suppress. The court made extensive findings of fact and conclusions of law.

### Standard of Review

 We are asked to review the trial court's granting of the motion to suppress. We review the trial court's ruling on a motion to suppress only to determine whether the evidence is sufficient to support the ruling. *State v. Dowell,* 25 S.W.3d 594, 604 (Mo.App.2000). The trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *State v. Tackett,* 12 S.W.3d 332, 336 (Mo. App.2000). The ruling is clearly erroneous if we are left with a definite and firm impression that a mistake has been made. *State v. Leavitt,* 993 S.W.2d 557, 560 (Mo. App.1999). We must view the facts and any reasonable inferences arising therefrom in a light most favorable to the rul-

ing. *State v. Carter,* 955 S.W.2d 548, 560 (Mo. banc 1997).

One of the State's claims is that the trial court erred in granting the motion because the warrant was supported by probable cause. The State asserts that our review of the probable cause determination is *de novo* pursuant to *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). This is incorrect. *Ornelas* involved a police officer's determination of probable cause. *Id.* at 691, 116 S.Ct. 1657. The stated holding of *Ornelas* is that "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Id.* at 699, 116 S.Ct. 1657. The court's explanation of why this is so makes it clear that the *de novo* standard does not apply to a magistrate's determination of probable cause:

> The Court of Appeals, in adopting its deferential standard of review here, reasoned that *de novo* review for warrantless searches would be inconsistent with the 'great deference' paid when reviewing a decision to issue a warrant. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See United States v. Spears,* 965 F.2d 262, 269–71 (C.A.7–1992). We cannot agree. The Fourth Amendment demonstrates a "strong preference for searches conducted pursuant to a warrant," *Gates,* supra, at 236, 103 S.Ct. at 2331, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable cause determination to issue a warrant is less than for warrantless searches. Were we to eliminate this distinction we would eliminate the incentive.

*Id.* at 698–699, 116 S.Ct. 1657.

The Missouri Supreme Court has also held that a reviewing court must give great deference to a magistrate's determi-

nation of probable cause. *State v. Laws,* 801 S.W.2d 68, 70 (Mo. banc 1990), *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990).

Other Missouri cases have held that whether the Fourth Amendment has been violated is a question of law, to be reviewed *de novo. State v. Slavin,* 944 S.W.2d 314, 317 (Mo.App.1997); *Leavitt,* 993 S.W.2d at 560; *State v. McFall,* 991 S.W.2d 671, 673 (Mo.App.1999). None of these cases involved a warrant. These cases stand for the proposition that the question of whether a *warrantless search* violated the Fourth Amendment is reviewed *de novo.*

■ Because this case involved issuance of a warrant, review of the probable cause determination is not *de novo.* We must review the trial court's granting of the motion to suppress for clear error. *Leavitt* at 560. We must at the same time give great deference to the issuing judge's initial determination of probable cause. *Berry* at 66.

### Analysis

■ The State first argues that the trial court erred in granting the motion to suppress evidence seized at the Route 3 residence.

### Propriety of the Franks hearing

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155–56, 98 S.Ct. 2674.

In its argument, the State asserts that the respondents' motions to suppress did not make sufficient allegations of deliberate falsehoods or reckless disregard for the truth to trigger a *Franks* hearing. In its point on appeal, the State only alleges that the *Franks'* hearing was improper because the trial court excluded evidence and then drew inferences from the excluded evidence. The point on appeal contains no mention of an insufficiency in the motion to suppress.

The sole mention of any falsehood in the motions to suppress was in support of the allegation that the warrant violated §§ 542.276.10 and 542.296, RSMo.

Respondents alleged only that "[t]he affidavits were defective as they contained deliberate false information." *Franks* requires more:

[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements

of witnesses should be furnished, or their absence satisfactorily explained.

*Id.* at 171, 98 S.Ct. 2674.

Respondents here did make allegations of deliberate falsehood. However, the motion did not specify what portion of the affidavit was claimed to be false, nor was it supported by any offer of proof or affidavits of witnesses. There was no explanation of this omission. Such a motion does not state a cognizable claim under *Franks*. *Laws,* 801 S.W.2d at 71.

■ Generally, an argument raised for the first time on appeal is reviewed only for plain error. *State v. Isa,* 850 S.W.2d 876, 884 (Mo. banc 1993). The State's argument appears to be raised for the first time on appeal. There is no mention of any pleading insufficiency in the State's suggestions in opposition to defendant's motion to suppress evidence and statements. There is nothing in the transcript that indicates that the prosecutor objected at any time to the sufficiency of the motion to suppress to require a *Franks'* hearing. The State has raised this issue for the first time on appeal, and we decline to exercise our discretion to review for plain error.

### Exclusion of testimony

■ The State also argues that the trial court clearly erred when it determined that Blunt lied when he included methamphetamine, etc., in the affidavit without allowing testimony from Blunt and Judge Sayre as to the purpose and effect of including that information in the affidavit.

■ The State made no offer of proof as to Blunt's reason for including the methamphetamine, etc. in the affidavit. When an objection is sustained, an offer of proof is necessary to preserve the matter for appellate review. *State v. Schneider,* 736 S.W.2d 392, 401 (Mo. banc 1987). We cannot determine if Blunt's testimony should have been admitted, because we do not know what it would have been. *See State v. Pisciotta,* 968 S.W.2d 185 (Mo. App.1998).

The State also argues that the court clearly erred when it determined that Blunt lied without allowing testimony from Judge Sayre, who issued the warrant. The prosecutor did make an offer of proof as to what Judge Sayre's testimony would have been. Judge Sayre's actual testimony did not go any further than his statement that he signed the first warrant. The prosecutor then asked Judge Sayre to describe the probable cause that allowed him to sign the warrant. The court sustained the objection to the warrant judge testifying as to his mental process. The offer of proof revealed that Judge Sayre would have testified that: 1) he understood the second search warrant to be anticipatory based on the language in the affidavit; 2) that he considered the language referring to present probable cause (for methamphetamine, etc., to be boilerplate; 3) he did not consider the "boilerplate" language when he signed the warrant; and 4) Blunt told him that Trenter had already agreed to accept delivery of the marijuana.

■ The State argues that when a defendant has alleged that the affidavit contains false statements, it is inappropriate to look only to the four corners of the affidavit. Generally, probable cause must exist within the four corners of the supporting affidavit. *State v. Miller,* 815 S.W.2d 28, 32 (Mo.App.1991). It would be impossible, however, to conduct a *Franks* hearing without considering matters outside the four corners of the affidavit. It does not necessarily follow, though, that evidence of the warrant judge's mental processes is admissible or that it was error to exclude testimony from the warrant judge.

Trenter argues that the trial court did not err because the testimony would have invaded the province of the trial court, and that there is "no legal authority for a warrant judge to give bootstrap testimony concerning the existence of probable cause." The prosecution's decision to call the warrant judge may have been common, but it was not unique.

A warrant judge testified at the suppression hearing in *State v. Webb,* 824 S.W.2d 464 (Mo.App.1992). *Webb* does not address the propriety of the warrant judge's testimony at a suppression hearing. Several federal cases make reference to a warrant judge testifying at a suppression hearing. *United States v. Ramirez,* 63 F.3d 937 (10th Cir.1995); *United States v. Smith,* 9 F.3d 1007 (2nd Cir.1993); *United States v. Moore,* 41 F.3d 370 (8th Cir.1994). None of these cases questions the propriety of such testimony. The magistrates in *Smith* and *Ramirez* both testified as to what they considered the basis for probable cause.

■ We do not need to address the propriety of such testimony as a matter of law. The trial court is vested with broad discretion to admit or exclude testimony. *State v. Copple,* 51 S.W.3d 11, 17 (Mo.App. 2001). Judge Sayre's testimony would have established: 1) that he did not consider the part of the affidavit that referred to methamphetamine, etc.; 2) that he did consider Blunt's oral statement to him that Trenter had already agreed to accept delivery of the package; and 3) that he considered the warrant to be anticipatory in nature. This would not have countered Blunt's testimony that he did not have probable cause to believe that methamphetamines, etc., were currently at the residence. It was not an abuse of discretion to exclude this testimony.

### Findings not supported by the record or clearly erroneous

■ The State argues that four sets of the trial court's findings of fact are not supported by the record or are clearly erroneous.

First, the State argues that the findings concerning Blunt's statement in the affidavit that he had probable cause to believe that methamphetamine, etc., was currently located at the Route 3 property were: 1) made after incomplete testimony; 2) made at an unwarranted *Franks* hearing; and 3) not supported by the record. These findings were:

2. Officer Blunt filed a sworn Affidavit with the prosecutor which was incorporated into the application for search warrant stating that he had probable cause to believe that specific listed property was now located at Route 3 at the time of application, to-wit:

"Any and all methamphetamine, a Schedule II controlled substance.

Any and all controlled substances and drug paraphernalia.

Any and all chemicals, glassware, instruction manuals, chemical formulas, cutting agents, chemical by-products and precursors used in the manufacture of methamphetamine.

Any and all papers and/or records associated with the sale/distribution/manufacture of controlled substances.

Any and all weapons and/or firearms used to protect the sale/distribution/manufacture of controlled substances.

Any United States currency determined to have been used in the sale of controlled substances or in close proximity thereof."

3. At the time Blunt presented his Affidavit to the prosecutor and to the Judge, he knew the allegations about illegal drugs now being at Route 3 were false and without any factual basis.

6. Officer Blunt testified that paragraphs A, B, C, D, and F of the sworn Affidavit were not applicable to Robert Trenter and Penny Bennett or to the Route 3 residence;

21. Officer Blunt is without credibility regarding any statements in this Affidavit due to his reckless conduct regarding all statements in the Affidavit and reckless statements orally made to the Judge.

30. The warrant bases probable cause on the sworn allegations of the prosecutor's complaint and from the sworn affidavit. The judge was not told that the allegations of marijuana and methamphetamine currently at Route 3 were false. The warrant incorporated the false affidavit of Officer Blunt.

36. Officer Blunt falsely told the Judge in his affidavit that marijuana and methamphetamines were currently at Route 3 and said in paragraph L that he would not execute the warrant unless Robert Trenter agreed to accept the package and then orally told Judge Sayre prior the execution of the warrant that Robert Trenter had already agreed to accept delivery of a blue cooler of marijuana in a telephone call which occurred immediately before the application for the warrant.

The State is actually making three distinct arguments here. The first is that these findings should not have been made at all, since the Franks' hearing was unwarranted. The second is that if the trial judge had allowed testimony from Officer Blunt and Judge Sayre, the resulting record would not have supported these findings. The third is that the record as it stands does not support the findings.

The first two arguments about this set of findings are dependent upon the State's earlier argument about the propriety of the *Franks'* hearing.

The State's argument that the findings are clearly erroneous because the Franks hearing was unwarranted must fail. As previously discussed, the State raises this argument for the first time on appeal. It is therefore waived. *Isa*, 850 S.W.2d at 884.

The State's second argument that these findings are clearly erroneous because they were made after an incomplete Franks' hearing, also fails. As previously discussed, there was no offer of proof, and we cannot speculate as to what Blunt's testimony would have been. We cannot say that Officer Blunt's testimony might have refuted any of these findings.

Judge Sayre's testimony would not have refuted any of these findings. His testimony would only have explained the basis of his decision to issue the warrant.

Because these first two arguments fail, the State is left with the bare assertion that the record as it stands does not support these findings of fact. The State asserts that although Blunt did not have probable cause to believe that methamphetamine, etc., were currently at the Route 3 residence, he would have probable cause to believe in the presence of these other items as soon as the cooler was delivered.

The State argues that we should view Blunt's use of the present tense in the affidavit in light of the circumstances, i.e., that what Blunt actually meant to say is that he would have probable cause in the

very near future, as soon as the delivery was accepted.

We must consider all the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling. *McFall*, 991 S.W.2d at 673. Although portions of these findings are based on the offer of proof from Judge Sayre, viewed in a light most favorable to the trial court ruling, these findings of fact are supported by the record. The trial court did have a basis for concluding that Blunt swore he had probable cause to believe that the methamphetamine, etc., was currently located on the Route 3 property. That basis, of course, was the affidavit itself, in which Blunt swore that he had probable cause to believe that the methamphetamine, etc., was currently located on the Route 3 property.

■ Second, the State argues that the findings concerning the lack of evidence that Trenter agreed to accept delivery of the marijuana for $100 per pound, and the lack of evidence of corroboration and reliability of the confidential informant are clearly erroneous because: 1) Trenter did agree on the tape to accept the marijuana; 2) Bevier's statements were corroborated by the warranty deed to the Route 3 property; and 3) Bevier's involvement in the crime provided indicia of reliability.

These findings were:

5. Officer Blunt made an unsworn oral statement to Judge Sayre prior to obtaining the warrant that in a telephone call Robert Trenter had agreed to accept delivery of marijuana at Route 3 but the telephone transcript contains no such agreement.

9. No police officer had any prior contact or knowledge of "Sherry" and she was not known to be previously reliable to any officer.

10. The warrant affidavit fails to state that any police officer corroborated any information provided by "Sherry".

11. In paragraph K, Blunt swore that Trenter is to take delivery of the marijuana and pay Ms. Pauley $100 for every pound delivered to him.

— Officer Blunt testified that none of that information was personally known to him and therefore he must have obtained that information from some other basis which was omitted from paragraph K.

— Blunt did not state the basis of that allegation in Paragraph K.

— Blunt testified he never talked to Sherry (Mrs. Pauley), Fox, Norman, or to Trenter.

— Blunt testified he got all the information in paragraph K from Conklin.

— Sherry and Fox did not testify.

— Conklin testified he did NOT tell Blunt that Sherry was to get one hundred dollars per pound for delivered marijuana as no one told Conklin that.

— Conklin testified that Fox and Norman did NOT tell him Sherry was to get $100 per pound for delivered marijuana (Tr. 233/10).

— No evidence of any corroboration of Sherry was presented.

— Norman did NOT testify that Sherry told him she was to receive $100 per pound for delivered marijuana.

— Blunt testified he got the information from Conklin who got it from Norman who allegedly got it from Sherry. The source is third-hand hearsay from an uncorroborated informant that was omitted from the Affidavit by Blunt.

— No evidence was presented to verify the basis of this allegation.

18. At the same time Blunt presented the Affidavit for the warrant, he orally told Judge Sayre that Mr. Trenter had (in a telephone call) already agreed to take delivery of the marijuana.

19. If what Blunt orally told Judge Sayre was true, then paragraph L was recklessly misleading as a condition to execution was only if a future event occurred. But, if what Officer Blunt orally told the Judge was not true, then Officer Blunt made a false statement to a judicial officer consistent with the false statements that drugs were present at Route 3. The State presented no evidence that Mr. Trenter agreed to accept a package.

This finding is partially based on the offer of proof.

20. In paragraph K, Officer Blunt said that Mr. Trenter was to take delivery of marijuana and pay $100 per pound but there is no evidence of any substantial basis for this conclusionary (sic) statement made by Blunt who falsely stated drugs were present at Route 3 and misled or lied to the Judge regarding paragraph L by orally saying that Mr. Trenter already agreed to accept the delivery of drugs while the Affidavit said he would not serve the warrant if Mr. Trenter "does not agree."

22. Officer Norman testified all he knew about Sherry's telephone call with the unknown voice was what she told him; he testified he listened to her side of that call.

23. The tape with Sherry and the unidentified male voice occurred before the warrant was issued and the tape contains no evidence of any agreement to accept delivery of illegal drugs at Route 3 for one hundred dollars per pound.

35. No facts were presented to show Officer Conklin had any factual basis to tell Officer Blunt that Robert Trenter agreed to accept delivery of illegal drugs. Norman, Fox, and Sherry never gave that testimony.

The State argues that the lack of any explicit agreement on the tape to accept marijuana is to be expected, and it is clear from the context that: 1) Bevier was speaking to Robert Trenter; 2) she expressed an interest in delivering something to him; and 3) Trenter, as well as Penny Bennett, told her to bring the unspecified "stuff" to the Route 3 property.

Assuming, *arguendo*, that the State is correct in these assertions, the content of the tape and the identity of the speakers is not relevant if Norman and Fox did not actually listen to the tape. Officer Conklin testified that Norman and Fox had not listened to the tape when the warrant was issued. The trial court was free to believe this testimony, especially in light of the ambiguity of Norman's testimony. Officer Norman's testimony only implied that he and Fox rewound the tape and listened to it:

Q. Did you listen—now, did you have the ability to listen to her side of the conversation?

A. Yes.

Q. And was that because you were there and present?

A. Yes.

Q. Now, did you have any ability to listen to the individual that was on the other end of the phone call?

A. Not until after the conversation was completed.

Q. And how would you then be able to listen to

A. Greg would rewind the tape and then play it.

Since the trial court found that Norman and Fox had not listened to the tape, it does not matter who Bevier was speaking with or what that person said. Without having heard the tape, Norman and Fox were relying on what they heard Bevier say and her representation as to what the other person said.

█ The only issues then are 1) whether Bevier's half of the conversation provided a sufficient basis for the allegations in the warrant, and/or 2) whether the officers were entitled to rely on what Bevier told them about the conversation.

A review of the transcript does not reveal any basis from Bevier's side of the conversation for the officers to conclude that there was an agreement to accept delivery of the marijuana. The only basis for their conclusion, then, would have been Bevier's representations of the conversation.

█ Conklin testified that Bevier told Norman and Fox that Trenter agreed to accept delivery of the marijuana. It is well established that hearsay, if it is properly corroborated, can serve as the basis for probable cause. *State v. Mitchell*, 20 S.W.3d 546, 553 (Mo.App.2000). Hearsay can also suffice if the information is obtained from a reliable informant. *State v. Hammett*, 784 S.W.2d 293, 296 (Mo.App. 1989).

The State argues that the warranty deed for the Route 3 property corroborates Bevier's statements. The warranty deed does list Trenter and Bennett as the owners of what was described as the "new house." This argument misses the point. While the fact that the warranty deed shows Trenter and Bennett as the owners might even corroborate Bevier's claim that she was talking to Trenter and Bennett on

the phone, it in no way corroborates her claim that Trenter had agreed to accept delivery of the marijuana.

The State also argues that Norman and Fox corroborated the agreement by listening to the tape. As previously discussed, the trial court's finding that these officers had not listened to the tape was not clearly erroneous.

In *State v. Davison*, 46 S.W.3d 68, 81 (Mo.App.2001), this court held that a confidential informant's statements about what he saw in defendant's storage locker were corroborated by the fact that the police had already determined that the defendant owned the storage locker in question, and that property had been stolen from the defendant's workplace. In *State v. Berry*, 801 S.W.2d 64 (Mo. banc 1990), *United States v. Jackson*, 898 F.2d 79 (8th Cir. 1990), and *State v. Williams*, 9 S.W.3d 3, 15 (Mo.App.1999), police officers were able to confirm descriptions of the scenes provided by anonymous tippers. In each case, the courts held that the accuracy of most of the information corroborated the tippers' claims. Of course, Bevier was not an anonymous tipper. Her claim was not that a certain object was present on the respondents' property. Her claim was that Trenter had spoken certain words. The only plausible corroboration of this claim would be another individual's claiming to have heard the same thing.

Bevier's claim that Trenter had agreed to accept delivery of the marijuana was uncorroborated hearsay. Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the affidavit need no longer pass the knowledge/reliability test that was required under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Berry*, 801 S.W.2d at 66. Probable cause is now determined from the to-

tality of the circumstances. *Id.* The informant's "basis of knowledge" and "veracity" are circumstances to be considered. Typically, when a confidential informant's statements are not corroborated, the State would include an indication of that person's reliability in the affidavit. *Hammett,* 784 S.W.2d at 296.

The State argues that Bevier's involvement in the crime provides its own indicia of reliability. *State v. Erwin,* 789 S.W.2d 509, 511 (Mo.App.1990). Respondents argue that, to the contrary, Bevier's involvement in the "criminal milieu" cuts against her reliability. *State v. Dudley,* 819 S.W.2d 51, 54 (Mo.App.1991). More problematic than the determination of Bevier's reliability, however, is Blunt's failure to allege that reliability in the affidavit.

Blunt did not allege Bevier's reliability in the affidavit because he never claimed to have obtained the information from her. Paragraph K does not reveal the source of Blunt's knowledge. Blunt never implied that he relied on Bevier for this information. The State argues here that Bevier's statements were corroborated and reliable, but the issuing judge had no indication that Bevier was even the source of the information. Practically speaking, paragraph K appears to be an assertion of Blunt's personal knowledge.

■■■ This is a world away from the typical situation in which the affiant acknowledges the source of the information but simply fails to allege the veracity of reliability of the informant. *See Davison,* 46 S.W.3d at 81. The affidavit need not recite the veracity or reliability of the informant. *Mitchell,* 20 S.W.3d at 552. But this in no way indicates that the affiant can utterly fail to mention that an informant or another participant in the crime was the source of the information. The issuing judge cannot accurately determine probable cause from the totality of the circum-

stances if he or she has no idea what the circumstances are. Without knowing that the information was provided by a confidential informant, the issuing judge cannot consider the totality of the circumstances as required by *Gates.*

These findings of fact were not clearly erroneous.

■■■ Third, the State argues that the findings concerning the nature of the warrant and the triggering event referred to in the affidavit are clearly erroneous because under a "common sense" reading of paragraphs K and L the conditions required for execution of the warrant are clear.

These findings were:

13. Paragraph L states that Officer Blunt was applying for an anticipatory search warrant, but, there was no condition precedent that the warrant be executed on actual delivery of any illegal drugs to Robert Trenter or acceptance of actual delivery of illegal drugs to Robert Trenter at any specific location.

14. Paragraph L states that the search warrant will not be served if Mr. Trenter does not agree to accept the package.

15. There are insufficient facts in paragraph L to provide probable cause that "the package" references a blue igloo cooler containing marijuana.

16. Paragraph L does not state any specific location where Robert Trenter would agree to accept the package.

17. Officer Blunt applied for an anticipatory warrant and swore in paragraph L that he would not serve that warrant if Mr. Trenter did not agree to accept the package which

referred to an event that had not yet occurred.

19. If what Blunt orally told Judge Sayre was true, then paragraph L was recklessly misleading as a condition to execution was only if a future event occurred. But, if what Officer Blunt orally told the Judge was not true, then Officer Blunt made a false statement to a judicial officer consistent with the false statements that drugs were present at Route 3. The State presented no evidence that Mr. Trenter agreed to accept a package.

32. The warrant did not contain any condition precedent of actual delivery before its execution.

36. Officer Blunt falsely told the Judge in his affidavit that marijuana and methamphetamines were currently at Route 3 and said in paragraph L that he would not execute the warrant unless Robert Trenter agreed to accept the package and then orally told Judge Sayre prior to the execution of the warrant that Robert Trenter had already agreed to accept delivery of a blue cooler of marijuana in a telephone call which occurred immediately before the application for the warrant.

 Search warrants are not to be invalidated by interpreting affidavits in a hypertechnical rather than a common sense manner. *Dowell*, 25 S.W.3d at 605. The preference for warrants that requires us to give deference to the issuing judge's determination of probable cause also requires some latitude in interpretation of the supporting affidavit. Even when the sufficiency of an affidavit is marginal, our determination should be informed by the preference accorded to warrants. *See*

*State v. Hill*, 854 S.W.2d 814, 818 (Mo.App. 1993).

 The State argues that these findings are clearly erroneous because a common sense reading of the affidavit dictates that the warrant would only be executed if Trenter actually accepted the package. In considering a supplemental affidavit for search warrant application, the judge is entitled to a common sense reading of the entire supporting affidavit. *State v. Gordon*, 851 S.W.2d 607, 612 (Mo.App.1993). This does not mean, however, that a judge may read things into the affidavit that simply are not there. The affidavit clearly states that the warrant would not be executed unless Trenter agreed to accept delivery. The State's argument that a common sense reading of this language should lead to the conclusion that the warrant would not be executed unless Trenter actually did accept delivery is not persuasive.

The *Gates'* Court noted that affidavits in support of warrants are often drafted by non-lawyers and in the haste of a criminal investigation. *Gates*, 462 U.S. at 235, 103 S.Ct. 2317. *State v. Hill, supra*, in which the Southern District rejected an argument based on the affiant's likely understanding of the concepts of personal knowledge and hearsay, is an example of the potential significance of the identity and circumstances of the affiant. The instant case is not. Blunt's statement that the warrant would not be executed "if Mr. Trenter does not agree to accept the package" is not ambiguous nor is it the result of any potential confusion between agreeing to accept and actually accepting.

It is also worth noting that the warrant itself is devoid of any conditional language[2]. These findings were not clearly erroneous.

2. Anticipatory search warrants, granted after a determination that probable cause will exist

Fourth, the State argues that the findings concerning the identity of the male voice on the tape recording and the identity of the white male who carried the cooler into the garage at the Route 3 residence were clearly erroneous, because the trial court ignored evidence that it was Trenter who carried the cooler into the garage and improperly excluded evidence that would have established that it was Trenter's voice on the tape.

These findings were:

12. No voice could be identified on a tape recording with a male voice and there was no evidence of the number dialed. The prosecutor's transcript listed the name "Bob" but that label was unsupported by any evidence.

33. Officer Conklin could not identify the person who helped "Sherry" remove a closed blue cooler from her vehicle as he was 600 yards away.

39. No evidence was presented that Trenter agreed to accept a package.

40. No evidence was presented that Trenter agreed to accept delivery of illegal drugs.

41. No evidence was presented that Robert Trenter did accept delivery of illegal drugs.

From 600 yards away, officers observed a white man carry the blue cooler from Bevier's car to the garage. Within a minute or so, the police executed the warrant and found Trenter in a barn 50 yards from the garage. None of the officers could identify the man as Trenter. There were two other white men present when officers searched the house. As Conklin headed up the driveway, he passed Bevier driving away from the house. Bevier told Officer Conklin that the delivery had gone "all right." The State argues that since the plan was for Trenter to accept the cooler, Bevier's statement was evidence that he had done so.

Even if Bevier's statement was evidence that Trenter had accepted the package, which is arguable, there was other evidence that officers did not know who had carried the cooler into the garage. The trial court was free to believe that evidence.

The State also argues that it was prepared to prove, by the testimony of Officer Logston, that the voice on the tape was Trenter's. The State argues that it was clearly erroneous for the court to exclude this testimony and then rely on the absence of that evidence for one of its findings.

It was clear from Officer Logston's testimony before the objection that he became familiar with Trenter's voice only after the arrest and that he had not listened to the tape until the morning of the suppression hearing. None of the officers involved in the search testified that they were able to identify Trenter's voice on the tape. Furthermore, since Norman and Fox had not actually listened to the tape when the warrant was issued, their ability to identify the voice would have been irrelevant.

in the future, are prohibited by state law in some jurisdictions. *See People v. Ross,* 267 Ill.App.3d 711, 205 Ill.Dec. 49, 642 N.E.2d 914 (1994). Missouri Courts have not passed on the validity of anticipatory search warrants. *See State v. Sweeney,* 701 S.W.2d 420, 426 (Mo. banc 1986) (validity of anticipatory warrants not reached because good faith ex-

ception to the exclusionary rule applied). Although we do not decide the issue, we note that many jurisdictions have held that anticipatory search warrants can pass constitutional muster. *See U.S. v. Tagbering,* 985 F.2d 946 (8th Cir.1993), *State v. Toone,* 823 S.W.2d 744 (Tex.App.1992), *Commonwealth v. Gauthier,* 425 Mass. 37, 679 N.E.2d 211 (1997).

These findings were therefore not clearly erroneous.

### Probable Cause Absent the False Statements

*Franks* provides that:

> In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 156, 98 S.Ct. 2674.

■ The State argues that even absent the alleged falsehoods in the affidavit, the warrant is sufficient to support a finding of probable cause. The trial court concluded that:

> After deletion of the false allegations of drugs being now on the property, deletion of A, B, C, D, and F which do not pertain to either Defendant or Route 3, deletion of paragraph K regarding payment of one hundred dollars for delivery of drugs and adding the material omissions, no probable cause exists for this warrant under the Franks analysis.

The State argues that all the facts in the affidavit regarding the delivery were observed by police officers or based on corroborated or inherently reliable hearsay. As discussed earlier, the trial court's finding that the alleged agreement to accept delivery of the drugs was not observed by police officers was not clearly erroneous. Additionally, the affidavit did not allege that the information was based on corroborated or inherently reliable hearsay.

Without the false statements, the affidavit contains only information about Blunt's background and experience: Blunt's representations in paragraphs A, B, C, D, and F as to the habits of drug traffickers; and the description in paragraphs G, H, I, and J of the Fed Ex package's journey from the dog's alert to the stop of Bevier. The only remaining information specific to Trenter is that he has a prior criminal conviction and that he is a known drug trafficker. This is clearly not sufficient to support probable cause.

### Good Faith

■ In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court held that evidence seized pursuant to an invalid search warrant may still be admitted if the police officers conducting the search and seizure relied in good faith on the warrant. *Id.* at 922, 104 S.Ct. 3405.

■ The *Leon* exception does not apply when: 1) the affidavit in support of the warrant contains deliberate false material in violation of *Franks;* 2) when the issuing judge abandons the judicial role; 3) when the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or 4) when the warrant is so facially deficient that the officers cannot reasonably presume it to be valid. *Id.* at 923, 98 S.Ct. 2674. Good faith reliance also does not excuse a search and seizure based on an invalid warrant if the warrant was improperly executed, *United States v. Medlin,* 798 F.2d 407, 410 (10th Cir.1986), or if the executing officers have not read the warrant before execution. *State v. Varvil,* 686 S.W.2d 507, 511 (Mo.App.1985).

The trial court concluded that because each one of these factors was present, the Leon exception did not apply to this search and seizure.

■ Because Leon so clearly states that its exception does not apply to an affidavit containing deliberate false material, it is not necessary to discuss the other situations. A Franks' violation invalidates a Leon exception. "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. Because the warrant here was based on Blunt's knowing false statements, the Leon exception does not apply.

Point I is denied.

In its second point on appeal, the State argues that the trial court erred in granting the motion to suppress evidence seized from the Route 1 residence.

The trial court concluded that:

6. The search of the Route 1 residence was based on an alleged consent search which was unlawful as the fruit of the poisonous tree because of the illegal search warrant of Route 3 and the illegal arrest and detention of Defendant Penny Bennett as any "consent" was not voluntary. Thus the Route 1 search was without lawful authority.

7. Any statements made by Penny Bennett made while she was in a custodial status with no freedom of movement after entry of the police to serve the illegal search warrant was limited as she was not free to leave her home which was seized under this illegal warrant; she was under arrest. No *Miranda* rights were given to her and any response or statements she made was a result of illegal police interrogation follow-ing an illegal arrest without *Miranda* based on an illegal police presence at the residence based on an illegal search warrant caused by reckless police conduct and therefore any statement by Penny Bennett is not voluntary.

The State first argues that the trial court's suppression of the evidence found at the Route 1 residence was clearly erroneous because it was based on the erroneous finding that the warrant was illegal. As previously discussed, this argument is without merit. The trial court's conclusion that the warrant was illegal was not clearly erroneous.

■ The State next argues that even assuming the trial court's conclusion that Bennett's consent was involuntary was correct, the evidence should still have been admitted under the "inevitable discovery" exception to the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *State v. Jackson*, 756 S.W.2d 620, 622 (Mo.App.1988). The inevitable discovery rule permits the introduction of illegally obtained evidence if that evidence would have inevitably been discovered absent the illegal conduct. If the inevitable discovery rule were to apply here, the evidence from Route 1 would be admissible despite the fact that law enforcement found that evidence as the result of the illegal search and seizure at the Route 3 residence.

■ The inevitable discovery exception to the exclusionary rule requires more than a possibility that the evidence might have been discovered. *See Jackson*, 756 S.W.2d at 622. The State argues that since law enforcement had control of the Route 1 residence, they would have eventually obtained a search warrant and discovered the contraband even if Bennett had not consented to the

search. This argument ignores the nature of the illegal conduct. The trial court's conclusions do indicate that Bennett's consent was involuntary in nature due to coercive circumstances. But the more fundamental problem with her consent was that it was obtained during an illegal search. If Bennett had refused consent, law enforcement indeed would have obtained a search warrant for the Route 1 residence. What the State fails to recognize is that even if the police had obtained a search warrant for the Route 1 residence, the evidence seized there would still be fruit of the poisonous tree, because the probable cause for that warrant would have been the evidence obtained during the illegal search of the Route 3 residence. Absent the original illegal conduct, the search of the Route 3 residence, it is impossible to say with any certainty that the Route 1 evidence would have been discovered.

The State last argues that the evidence discovered at the Route 1 residence was discovered pursuant to a good faith exception under *Leon.* As previously discussed, the *Franks'* violation renders *Leon* inapplicable.

Point II is denied.

Respondents Trenter and Bennett both make additional arguments in support of the trial court's ruling. Since the State's points on appeal are denied, we do not discuss those arguments.

The trial court's granting of the motion to suppress is affirmed.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.