

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD77664** |
| | ) | |
| v. | ) | **OPINION FILED: February 17, 2015** |
| | ) | |
| **GREGORY ROBINSON, SR.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Randolph County, Missouri**
The Honorable Scott Alan Hayes, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

The State brings this interlocutory appeal, challenging the trial court's grant of

Gregory Robinson, Sr.'s ("Robinson") motion to suppress physical evidence relating to

manufacturing drugs and maintaining a public nuisance. The State argues that the trial

court erred in determining that the affidavit offered in support of the search warrant for

Robinson's home failed to demonstrate probable cause, and that regardless, the good-faith

exception to the exclusionary rule applies because the officers acted in good faith in

executing the search warrant. We agree with the trial court[1] that the affidavit offered in support of the search warrant did not demonstrate probable cause. However, because we agree with the State that the good-faith exception to the exclusionary rule applies, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

The facts are not in dispute. Following a search pursuant to a warrant of his home in Randolph County, Robinson was charged by information with two counts: the Class A felony of manufacturing/producing or attempting to manufacture/produce more than five grams of marijuana in a residence with a child or within two thousand feet of a school, college, or school bus, in violation of Section 195.211,[2] and the Class C felony of keeping or maintaining a public nuisance in violation of Section 195.130. Robinson filed a motion to suppress, alleging that the affidavit offered in support of the search warrant was insufficient to establish probable cause.

On August 1, 2013, the issuing judge signed the warrant to search Robinson's home at 518 Porter Street in Moberly. The affidavit, sworn to by Sgt. Mark Arnsperger ("Sgt. Arnsperger")[3] was part of a warrant application dated July 31, 2013. The affidavit included a detailed description of Robinson's residence and stated in pertinent part:

> On July 27, 2013 I was contacted by a Reliable confidential source, who stated sales of illegal drugs, were occurring at 518 Porter St. The source had specific detailed information Gregory Robinson aka: Skud was still selling crack cocaine and is now doing it from his residence at 518 Porter

---

[1] In this case, the judge who issued the search warrant ("issuing judge") and the trial judge ("trial judge") are different judges. We refer to each separately to avoid confusion.

[2] All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

[3] Sgt. Arnsperger was the affiant who applied for the search warrant and was also the lead officer in serving the search warrant.

2

St. The source said Robinson is no longer dealing crack cocaine from the "Sugar shack" on West End or the yellow house across the street from the "Sugar shack". The yellow house the source referring to is, 1014 W End which was owned by Gregory Robinson, but now has been transferred to Greg Robinson Jr's name.

On November 8, 2012 Det Tim Rowe served a narcotics search warrant at Gregory Robinson's house at 1014 W End after receiving information Gregory Robinson and Donamitris Robinson were selling crack cocaine from the residence. Officers arrived at approximately 0630hrs that morning and found crack cocaine in the residence but Gregory Robinson was gone. Gregory Robinson was not located and was never questioned about this incident, and thus he was never charged. Det Rowe said the house was clearly set up as a "drug house". There was little furniture in the residence and there was large pit bull tied up out front.

A check of Gregory Robinson criminal history shows in May 1999, Gregory Robinson pled guilty to 2 counts of Distribution of a Controlled Substance near a School and he received a 10 year sentence. Then in August 2007, Gregory Robinson pled guilty again to Distribution of a Controlled Substance, for a total of 3 counts and received a 15 year sentence.

I contacted the Moberly Water Office and confirmed the water service at 518 Porter St is in the name of Gregory Robinson.

I also noted prior to me getting this information, I would note while on routine patrol the last two months, the lack of activity at the 1014 W End and at the "Sugar Shack". The "Sugar Shack" is a nick name for small garage located at 1015 W End Pl and is currently owned by Greg Robinson Jr; the son of Gregory Robinson.

The "Sugar Shack" has a long history of place where people (mostly with criminal histories) would get together and gamble and also sell illegal drugs from the garage. In July 2006, Det David Johnson and I went to the "Sugar Shack" and served a search warrant and arrested Alex Cason and Richard Payne for Possession of Controlled Substance (Crack Cocaine) was found, along with illegal gambling machines.

On July 30, 2013 Det Rowe observed a Red in Color Mercury Mountaineer parked at 518 Porter Street. The Missouri License number was SD5B2U, which checks to Dorthy Seiler of 611 Cleveland. A check of Department records revealed, we received a call on June 24, 2013 from Dorthy Seiler

3

and her boyfriend, Maurice Antonio Jackson. Jackson thought his vehicle might have been shot and he also mentioned he has problems with Princess Midgyett.[4]

A check of Maurice Jackson's criminal history revealed he has prior convictions for drug sales. September 2005, Jackson pled guilty to Felony Possession of Controlled Substance and received a 15 year sentence. In September 2006, Jackson pled guilty to Distribution of a Controlled Substance and received another 15 year sentence. In December 2008, Jackson pled guilty to Distribution of a Controlled Substance and Distribution of a Controlled Substance near Government Housing. A check of Probation and Parole records shows Maurice Jackson is currently on Field Supervision by Officer Andrew Morris and is residing at 611 Cleveland, Moberly MO.

On July 30, 2013 I was contacted by Det David Johnson with the North Missouri Drug Task Force. Det Johnson stated he had reliable confidential source that saw an "8 ball" of Crack Cocaine and large amount of cash at 518 Porter St, in the last 30 days.

As an experienced and trained investigator I have reason to believe, based upon my investigation the crimes(s) Distribution of a Controlled Substance, RSMo statutes 195.211 and Possession of a Controlled Substance, RSMo statute 195.202 Maintaining a Public Nuisance RSMO 195.130 have been committed and that evidence of such criminal activity is Currently contained within the above-described property currently in the possession of Gregory Robinson Sr. In light of concerns described above, this Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve data that may be contained within cellular phones described herein, including password-defeating tools and techniques.

Additionally, in light of concerns described, this Affiant requests permission to have any storage devices and/or computer-related evidence transported out-of-county as necessary in the process of conducting analysis on said evidence, to involve the use of non-sworn personnel in activities related to the acquisition and analysis of said evidence, and to conduct analysis of said evidence beyond the deadline date for the filing of a return of any search warrant issued based upon this application.

---

[4] Nowhere in the affidavit (or the record) is there any identification or explanation of "Princess Midgyett."

4

The search of Robinson's residence was executed on August 2, 2013, the day after the warrant was filed. A "Return and Inventory" signed by Sgt. Arnsperger stated that he found, *inter alia*, what was believed to be cocaine and crack cocaine and more than $2,000 in cash.[5]

Prior to trial, Robinson filed a motion to suppress all evidence seized from his home. In that motion, he took issue with the statements of the two confidential sources. He argued that the statements should have fallen outside of the issuing judge's determination of probable cause because the affidavit failed to meet the fundamental requirements to credit the statements of the confidential sources under Missouri law. Specifically, Robinson argued that the information provided by the confidential sources was unreliable because the affidavit did not include a specific time and place in which the sources observed the drug trafficking, because the sources did not specifically state that they personally observed Robinson possessing the drugs, because there was no statement regarding the qualifications of the sources, and because the information was stale by the time the officer applied for a search warrant. Robinson further argued that once the statements were removed from the determination, the remaining information in the affidavit failed to provide the required probable cause for the issuing of the warrant. Robinson also contended that the good-faith exception to the exclusionary rule should not be applied because the affidavit was so lacking in probable cause that the good-faith exception should not salvage the search and would frustrate the purpose of the exclusionary rule.

---

[5] It is unclear why the charging document specifies marijuana, but that is not raised as an issue on appeal.

Without conducting an evidentiary hearing, the trial court sustained the motion. In its judgment, the trial court noted that the affidavit stated that Sgt. Arnsperger had reason to believe that the two crimes had been committed and that evidence of such criminal activity is "[c]urrently contained within the above-described property currently in the possession of Gregory Robinson Sr." The trial court found, however, that the affidavit failed to provide probable cause because "it does not set forth facts to believe that the evidence sought would be found in [Robinson's] home at the time the search warrant was issued" in violation of Robinson's constitutional rights.

The trial court stated that the information from the two sources contains "no specific time, or time frame, when the alleged illegal activity or contraband was observed"; "no facts that the informant personally observed [Robinson] in possession of contraband or personally observed seeing contraband" at the Porter Street residence; and "no qualification" of the confidants' reliability. The trial court additionally found that the information was "stale" as to both sources and that the two sources' statements failed to corroborate each other's information.

After deeming the statements from the two confidential sources "improperly included in the issuing judge's probability determination of probable cause," the trial court then examined the remaining content of the affidavit. That content was the search of the End Place address in 2012, the lack of activity at the End Place address and the "Sugar Shack," Robinson's criminal history, and Dorothy Seiler's car parked near Robinson's Porter Street address. The trial court determined that in the "totality of the circumstances, those statements fail to show there to be a fair probability that contraband

6

or evidence thereof would be found at [Robinson's Porter Street address] <u>at the time the search warrant was issued</u>."

The trial court went on to find that Sgt. Arnsperger's "affidavit was so lacking in indicia of probable cause that it was unreasonable for the officer to rely upon it" and that the affidavit "demonstrates systemic negligence in regard to the careless preparation of warrant affidavits, which is a recurring problem of law enforcement of this State."

Accordingly, the court suppressed all of the evidence seized from the Porter Street residence. The State brings this interlocutory appeal.

## STANDARD OF REVIEW

"[O]nly the issuing judge's initial determination of probable cause based on the information contained within the four corners of the affidavit is reviewed for error." *State v. Wilbers*, 347 S.W.3d 552, 555 (Mo. App. W.D. 2011). The trial court's ruling on the motion to suppress is not under review. *Id.* We give "great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." *State v. Neher,* 213 S.W.3d 44, 49 (Mo. banc 2007) (citation omitted). Our duty is to ensure that the issuing judge had a "substantial basis" for determining that probable cause for the search did exist. *Id.* (citation omitted). "In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *Id.* (citation omitted). We may reverse only if the "issuing magistrate or judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed." *Id.* (citation omitted). In reviewing the issuing judge's decision, we note that "[c]learly erroneous

7

means the reviewing court is left with the definite and firm conviction that a mistake has been made." *State v. Letica*, 356 S.W.3d 157, 164 (Mo. banc 2011) (citation omitted).

Whether the exclusionary rule applies in a particular case, however, is a question of law that we review *de novo*. *State v. Johnson*, 354 S.W.3d 627, 632 (Mo. banc 2011).

## ANALYSIS

In its sole point on appeal, the State argues that the trial court erred in suppressing all evidence from the search of Robinson's home at the Porter Street address because the exclusionary rule should not have been applied in that there was probable cause for the issuing court to issue the search warrant. The State further argues that even if there was not probable cause, the officers who executed the search reasonably and in good faith relied on a facially valid search warrant pursuant to *United States v. Leon*, 468 U.S. 897 (1984) and that it was not part of a pattern of systemic negligence.[6]

### Probable Cause

Our first question, then, is whether the issuing court was clearly erroneous in its determination that the warrant contained a substantial basis for concluding that there was probable cause to search Robinson's home. Review necessarily entails consideration of the tensions between the sometimes competing goals of deterring official misconduct and removing inducements to unreasonable invasions of privacy on one hand, and following

---

[6] The State's point is multifarious. It claims two legal bases for reversal and should have laid out these bases in separate points on appeal with the separate standards of review. Multiple claims of error in one point relied on render the point multifarious and violate Rule 84.04, made applicable to briefs in criminal appeals by Rule 30.06(c). *State v. Brightman*, 388 S.W.3d 192, 196 (Mo. App. W.D. 2012). In general, multifarious points preserve nothing for appellate review and are subject to dismissal. However, because we prefer to decide cases on the merits where appellant's argument is readily understandable--as is the case here-- we have elected to exercise our discretion to review the merits of the arguments set forth in the point relied on.

8

procedures yielding acquittal or conviction on the basis of all truthful evidence, on the other. *Leon*, 468 U.S. at 900.

The Fourth Amendment to the United States Constitution ensures the rights of citizens to be free from unreasonable searches and seizures and requires that no warrant shall issue except on probable cause supported by oath or affirmation. The Missouri Constitution provides coextensive protection. MO. CONST. ART. I, § 15; *State v. Baker*, 103 S.W.3d 711, 717-18 (Mo. banc 2003). Fourth Amendment protection encompasses "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." The Fourth Amendment includes the "right to be notified by law enforcement officials of their purpose and authority prior to entering a dwelling." *Baker*, 103 S.W.3d at 718 (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)).

The seminal case addressing whether a warrant establishes probable cause is *Illinois v. Gates*, 462 U.S. 213 (1983). In *Gates*, the United States Supreme Court held that a determination of probable cause is conducted under a test of the "totality of the circumstances." *Id.* at 238. In overruling an earlier line of cases, the *Gates* Court held that the concepts of "veracity," "reliability," and "basis of knowledge" of persons supplying hearsay information, such as confidential informants, are relevant considerations, but they are not entirely separate and independent requirements to be rigidly applied in every case. *Id.* at 230. Rather, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision on whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of

9

knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*.

"The presence of such contraband or evidence 'need not be established, at a *prima facie* level, by a preponderance of the evidence or beyond a reasonable doubt.'" *State v. Henry*, 292 S.W.3d 358, 363 (Mo. App. W.D. 2009). Instead, the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (citation omitted).

As noted in *Gates*, "[c]ommon sense is a key ingredient in considering the absence or presence of probable cause." *Wilbers*, 347 S.W.3d at 557. "'[R]eliance upon factual allegations necessarily entails some degree of reliability upon the credibility of the source.'" *Gates*, 462 U.S. at 230 n.6 (quotation omitted). But it is not required that "each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint." *Id*. (citation omitted). Rather, those concepts "should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*.

In alignment with the common-sense approach in *Gates*, courts have repeatedly held that deference to the court issuing the warrant is not without limit. *Wilbers*, 347 S.W.3d at 557-58 (citation omitted). "Reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon*, 468 U.S. at 915 (quoting *Gates*, 462

10

U.S. at 239). "A common-sense reading does not allow a judge to 'read things into the affidavit that simply are not there.'" *Wilbers*, 347 S.W.3d at 558 (citing *State v. Trenter*, 85 S.W.3d 662, 677 (Mo. App. W.D. 2002)). "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." *Wilbers*, 347 S.W.3d at 558 (quoting *Leon*, 468 U.S. at 915 (citing *Gates*, 462 U.S. at 238-39)).

## Discussion

A review of the record indicates that the issuing court was not presented a "substantial basis" for concluding that there was a "fair probability" that the search would uncover the presence of drugs in the home at the time the warrant was issued. In so holding, under a review of the totality of the circumstances, we agree with the trial court that, as to the confidential sources, the warrant (1) contains no indication of any basis for reliability or credibility as to the first confidential source and merely contains a wholly conclusory statement without information as to how the confidential source came into this knowledge, and (2) does not adequately comply with requirements concerning time elements as to the second confidential source, including specificity and staleness. The remaining information in the warrant is as indicative of innocence as it is of guilt.

The affidavit in this case presents information that is divisible into two classes: hearsay statements from two confidential sources, and additional information from law enforcement. As noted above, the rule relating to hearsay statements is that, "[a]n

11

affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay." *Neher*, 213 S.W.3d at 49 (citation omitted). "The requisite substantial basis for use of hearsay is met if the affidavit shows that the ***informant learned the information through personal observation and*** if the informant's statements ***are corroborated through other sources***." *State v. Laws*, 801 S.W.2d 68, 70 (Mo. banc 1990) (citation omitted; emphasis added). An affidavit can establish probable cause, however, where "implicit in the affidavit is an understanding that the informant learned his information through personal observation." *Neher*, 213 S.W.3d at 50 (quoting *Laws*, 801 S.W.2d at 70). Moreover, while it is not necessary to establish the past reliability of the informant, "factual statements of past reliability are a sufficient basis for the magistrate to gauge independently the reliability of an informer." *Laws*, 801 S.W.2d at 69-70 (citation omitted).

Here, as to the first source, Sgt. Arnsperger described the person as "reliable" but provided no factual statements to support that description. For example, Sgt. Arnsperger included no indication that the source provided reliable information to law enforcement or this particular officer in the past, or merely has a reputation for reliability in the community, or just seemed to the officer to be reliable during a single, brief phone conversation when the information was provided even though the officer had no idea who was on the other end of the telephone line. Nor did Sgt. Arnsperger provide any indication that the source witnessed any activity through personal observation -- the information is merely a conclusory statement that a "reliable" source indicated that Robinson was now selling drugs from his home rather than from another location (i.e. the

12

source "heard it from a friend, who heard it from a friend, who heard it from another").[7]

While it may be the case that more specific details were provided to Sgt. Arnsperger or that particular source indeed had proven reliable in the past, Sgt. Arnsperger failed to communicate any basis of past reliability or how, if it all, the first source learned of drug sales at Robinson's home so as to provide a substantial basis -- the constitutional minimum -- for probable cause.

The State argues that one can infer from the first source's statement that he or she personally observed the activity at Robinson's home. In support, the State directs us to *Neher*. There, an officer received a telephone call from a "reliable confidential informant" and on the basis of the call applied for a warrant. 213 S.W.3d at 46. The informant provided details about the defendant's residence and stated that the defendant had been "cooking meth" the night before, that the defendant "has all the chemicals used in manufacturing methamphetamine," and that the defendant "is in possession of paraphernalia for the manufacturing and use of methamphetamine." *Id.* The affidavit additionally noted that one of the defendant's associates had been in the residence and stated that the defendant "is a known drug user, and manufacturer . . . , and also has a criminal history for possession of controlled substances." *Id.*

The *Neher* Court rejected the argument that there was no substantial basis for judging the confidential informant's basis of knowledge or veracity. Specifically, the Court noted that the caller provided a detailed description of the residence, reported that the defendant had been "cooking meth" the prior evening and possessed the chemicals

---

[7] REO SPEEDWAGON, *Take It On The Run*, on HI INFIDELITY (Epic Records 1980).

13

and materials to manufacture methamphetamine, and identified an associate who had been in that residence. From those facts, the Court held that the issuing court could infer that the informant had personally observed the information reported. 213 S.W.3d at 50. The *Neher* court went on to hold that the issuing judge could determine the informant's veracity by looking at whether his or her information was corroborated. *Id.* In so holding, the *Neher* court held that past reliability of an informant is "sufficient information alone" to support a finding of probable cause. *Id.* (citation omitted).

In this case, as detailed above, specific information from the confidential source is completely absent. The source's statement summarily indicated that Robinson was selling cocaine from his residence but failed to provide any indicia of reliability or, more to the point, any means to infer that the informant had personal knowledge of this fact. Because one cannot infer personal observation from the summary of the first confidential source's information, *Neher* is inapposite.

In so concluding, we again draw support from *Gates*, which stressed that an affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, "and [a] wholly conclusory statement" does not meet that standard. 462 U.S. at 239. Although the *Gates* holding overturned the test from *Aguilar v. Texas*, 378 U.S. 108 (1964), the *Gates* Court nonetheless reaffirmed from *Aguilar* that an "***officer's statement that 'affiants have received reliable information from a credible person and believe'***" that contraband is being stored in a home ***"is likewise inadequate.***" *Id.* (citing *Aguilar*, 378 U.S. 108) (emphases added). That is because "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment

14

regarding probable cause" is insufficient. *Gates*, 462 U.S. at 239. Rather, "[s]ufficient information must be presented to the magistrate to allow the official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* The information in Sgt. Arnsperger's affidavit is not meaningfully more specific or reliable than was the case in *Aguilar*. It is, rather, a bare conclusion.

The information from the second source fails due to timeliness and staleness. The rule is that the "requirement of probable cause includes an element of timeliness; specifically, that the facts presented to the issuing judge are sufficient to justify a conclusion that the items sought are probably on the premises searched at the time the warrant issues." *State v. Valentine*, 430 S.W.3d 339, 344 (Mo. App. E.D. 2014) (citations omitted). The police will encounter problems of "staleness" of information if they delay too long in seeking a warrant. *Id.* However, there is no bright-line test for determining staleness, and "time factors must be examined in the context of a specific case and the nature of the crime under investigation." *Id.*

In this case, the second source did state that an "8 ball" of crack cocaine[8] and a large amount of money were observed at this location. However, the source went on to state broadly that the contraband was observed in the "last 30 days." "Probable cause must exist when a warrant is issued, not merely at some earlier time." *Wilbers*, 347 S.W.3d at 560 (citation omitted). The *Valentine* court detailed several cases separating staleness in drug cases into crimes involving a user amount and crimes involving ongoing drug sales. 430 S.W.3d at 344. To that end, the *Valentine* court noted that cases

---

[8] An "8 Ball" refers to one-eighth of an ounce or 3.5 grams of the drug.

15

involving ongoing drug operations mean there is a greater likelihood that evidence will remain present longer than cases involving a user amount. *Id.* However, even in cases where ongoing drug sales were at issue, we know of no Missouri case where the passage of thirty days met the constitutional limitations, without being coupled with the results of more recent police follow-up efforts. The remaining information provided in the affidavit was as indicative of innocence as guilt.[9] Under the facts of this case, where the affidavit is so devoid of details, we find that the thirty-day passage of time made the information stale.[10]

The State argues in essence that the two sources' statements, when read together, cure each others' defects so as to provide the specificity and time elements. While this is a close case, we agree with the trial court that separately the two statements are so problematic and bereft of assurances of reliability and specificity so as to render the issuing court without the ability to find probable cause based on this affidavit. We also agree with the trial court that when the two sources' statements are excised from the affidavit, the remaining information is not supportive of the minimum standard for establishing probable cause. The remaining information is (1) the search of the End

---

[9] *See State v. Miller*, 815 S.W.2d 28, 33 (Mo. App. E.D. 1991) (holding that five-month old information was not too stale to consider where police had received information from Drug Enforcement Agency days before warrant issued; police had acted upon and independently corroborated DEA information), *and State v. Williams*, 9 S.W.3d 8, 17 (Mo. App. W.D. 1999) (four-month old information was not too stale to consider where there were other circumstances alleged, including "a fair probability that the appellant was engaging presently" and "especially where . . . there were observations of narcotic activity by police officers other than the affiant.").

[10] We additionally note that the trial court determined that there was "no specific time, or time frame, when the alleged illegal activity or contraband was observed by the first informant." The State argues that the use of the word "now" indicates that the observation met requirements for time specification. A full reading of Sgt. Arnsperger's affidavit seems to indicate that the use of the word "now" was a contrast to the "then" referring to the Sugar Shack, rather than a statement that the activity was presently occurring. Regardless, given that the first source's statements were fatally defective as a "wholly conclusory" allegation of criminal activity, we do not resolve the matter.

16

Place address in 2012 that not only yielded no evidence of Robinson's guilt of any crime and was also a case about which Robinson was never even questioned, (2) the *lack* of activity at the "Sugar Shack," (3) Robinson's criminal history, whose most recent conviction was secured in 2007, (4) a parked vehicle owned by the girlfriend of someone whose last drug-related conviction was in 2008, and (5) confirmation from a utility that Robinson was paying the utilities and therefore presumably resided at the Porter Street residence. The remaining reported information is as indicative of innocence as it is of guilt. *See Trenter*, 85 S.W.3d at 679 ("The only remaining information specific to Trenter is that he has a prior criminal conviction and that he is a known drug trafficker. This is clearly not sufficient to support probable cause."); *Leon*, 468 U.S. at 903 n.2 (noting that the district court found that the warrant lacked probable cause where the "reliability and credibility of the informant [was not] established" as "details given tended to corroborate, maybe, the reliability of [the informant's] information about the previous transaction, but if it is not a stale transaction, it comes awfully close to it; and all the other material I think is as consistent with innocence as it is with guilt.").

The "totality of the circumstances" test simply cannot be stretched far enough to validate this warrant. *State v. Brown*, 741 S.W.2d 53, 57 (Mo. App. W.D. 1987).

**Good Faith**

The State argues that even if the warrant did not establish probable cause, the officers who executed the search reasonably and in good faith relied on a facially valid search warrant that was not a part of a pattern of systemic negligence. The State thus

17

argues that the trial court should be reversed under the good-faith exception to the exclusionary rule.

The general rule is that evidence obtained as a direct result of an unlawful search or seizure is considered "fruit of the poisonous tree" and is inadmissible at trial. *State v. Lucas*, No. WD 77088, 2014 WL 5337374, at *2 (Mo. App. W.D. Oct. 21, 2014) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Wong Sun v. U.S.*, 371 U.S. 471, 484 (1963)). However, in *Leon*, the United States Supreme Court held that evidence obtained by police officers in objectively reasonable reliance on a subsequently invalidated search warrant should not be suppressed pursuant to the exclusionary rule. *State v. Clampitt*, 364 S.W.3d 605, 613 (Mo. App. W.D. 2012) (citing *Leon*, 468 U.S. at 922). The rationale for the exception to exclusion is that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922.

The *Leon* Court thus held that "[w]hen police act in reasonable reliance on a facially valid search warrant issued by a detached and neutral magistrate, the exclusionary rule will not operate to bar evidence obtained under the search warrant, even though the warrant may be invalid." *State v. Buchli*, 152 S.W.3d 289, 305-06 (Mo. App. W.D. 2004) (citing *Leon*, 468 U.S. at 921-21). The *Leon* good-faith exception has been expanded to "police mistakes that are the result of negligence as opposed to 'systemic error or reckless disregard of constitutional requirements.'" *Clampitt*, 364 S.W.3d at 613.

*Leon* further provided, however, that the good-faith exception does not apply and suppression remains appropriate if: (1) the affiant provides information he knows or reasonably should know is false;[11] (2) the magistrate or judge wholly abandons his or her judicial role; (3) the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient the executing officers cannot reasonably presume it to be valid. *Wilbers*, 347 S.W.3d at 562 (internal quotation omitted).

In our *de novo* review of this issue, we hold that the trial court's two grounds for rejecting the application of the good-faith exception were erroneous. Specifically, (1) we disagree with the trial court that Sgt. Arnsperger's "affidavit was so lacking in indicia of probable cause that it was unreasonable for the officer to rely upon it," and (2) the record does not permit a determination that the affidavit "demonstrates systemic negligence in regard to the careless preparation of warrant affidavits, which is a recurring problem of law enforcement of this State."

As to whether the affidavit was "so lacking in indicia" of probable cause such that Sgt. Arnsperger was unreasonable to rely on it, our inquiry is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *State v. Brown*, 741 S.W.2d 53, 59 (Mo. App. W.D. 1987) (quoting *Leon*, at n.23).

---

[11] The good-faith exception does not apply and suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923.

19

Here we don't have any information from which to determine if the lack of appropriate details were omitted from the affidavit because the affiant was lazy, sloppy or merely poorly communicated the information in the rush to obtain the warrant or in the alternative the requisite details did not exist and the affiant was merely stringing together small bits of information in an attempt to obtain a warrant for which he was aware probable cause was lacking.

Here, the first confidential source (1) correctly provided Robinson's address, (2) indicated to the officer that Robinson was selling crack cocaine, (3) detailed that Robinson had at one time been selling illegal drugs from the "Sugar Shack," a building on End Place that he used to own, but "now" was doing so from his residence on Porter Street. Though wrought with ambiguity, it is possible that the requisite details needed to support a probable-cause determination were in Sgt. Arnsperger's possession and that he simply failed to list them in his affidavit. It is entirely possible that each confidential source had a long-term history of providing law enforcement with reliable information and that each source had personally and recently witnessed the events they related to the officers. However, it is equally as possible that the sources relayed to the officers that the information provided was merely taken from rumors heard on the street and that they had no idea exactly when the events related actually occurred, if they had in fact occurred.

Taken apart, the deficiencies in the two sources' statements are troublesome and should have alerted the issuing judge to require the officer to provide additional details in the affidavit, but together the sources -- along with police efforts to confirm Robinson's address, to search his criminal history, and to conduct surveillance of his home and of the

20

"Sugar Shack" -- appear to indicate that the police executed the warrant in good faith. Regardless, "a reasonably well-trained officer's reliance on this [poorly drafted] affidavit cannot be considered entirely unreasonable." *Wilbers*, 347 S.W.3d at 562. And in this case, on this record, we cannot find that the error rests on the officer but on the issuing court.[12] *Id.*

Additionally, the trial court's finding that this case "demonstrates systemic negligence in regard to the careless preparation of warrant affidavits, which is a recurring problem of law enforcement of this State," is utterly without support in the record. The trial court pointed solely and broadly to the *Wilbers* case for support that the problem of insufficient support for warrants is recurring and widespread. But this finding by the trial court -- made without an evidentiary hearing, any evidence or even a statement on the record or in the judgment from the trial court as to its own experience with the particular law enforcement agency-- fails to take into account that the *Wilbers* court allowed the admission of the evidence under the good-faith exception, the very exception the trial court declined to apply in this case. On this bare record, we fail to see how similar deficiencies in affidavits from two different law enforcement agencies filed years apart establishes systemic negligence.[13]

---

[12] Robinson makes no allegations that the officer intentionally provided false or misleading information to the issuing court so as to implicate a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

[13] The trial court may be aware of additional problems in this regard from this particular law enforcement agency, but failed to make a record from which we can review the validity of this conclusion.

## CONCLUSION

Because the evidence obtained as a result of the invalid search warrant, based upon the record established to this point in the proceedings, is admissible by application of the good-faith exception to the exclusionary rule, the judgment of the trial court is reversed. The cause is remanded for further proceedings consistent with this opinion.

_____
Gary D. Witt, Judge

All concur.

22