**STATE of Missouri, Appellant,**

v.

**Gregory L. ROBINSON, Respondent.**

**WD 79853**

Missouri Court of Appeals, Western District.

Filed: May 23, 2017

Richard A. Starnes, Jefferson City, MO, for appellant.

Clark L. Jones, Columbia, MO, for respondent.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Lisa White Hardwick and Gary D. Witt, Judges

Lisa White Hardwick, Judge

The State of Missouri appeals the circuit court's order granting Gregory Robinson's motion to suppress evidence relating to charges of manufacturing drugs and maintaining a public nuisance. The State contends the court erred in finding that the good faith exception to the exclusionary rule should not be applied because the officer who prepared the warrant affidavit demonstrated systemic negligence in his careless preparation of warrant affidavits. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[1]

On August 1, 2013, a judge signed a warrant to search Robinson's home at 518 Porter Street in Moberly. An affidavit, sworn to by Sergeant Mark Arnsperger[2] of the Moberly Police Department, was

---

1. Many of the facts are adapted from this court's opinion in *State v. Robinson*, 454 S.W.3d 428, 433-36 (Mo. App. 2015), without further attribution.

2. Arnsperger was the affiant who applied for the search warrant and was also the lead officer in serving the search warrant.

part of the warrant application dated July 31, 2013. The affidavit included a detailed description of Robinson's residence and stated, in pertinent part:

On July 27, 2013 I was contacted by a Reliable confidential source, who stated sales of illegal drugs, were occurring at 518 Porter St. The source had specific detailed information Gregory Robinson aka: Skud was still selling crack cocaine and is now doing it from his residence at 518 Porter St. The source said Robinson is no longer dealing crack cocaine from the "Sugar shack" on West End or the yellow house across the street from the "Sugar shack". The yellow house the source referring to is, 1014 W End which was owned by Gregory Robinson, but now has been transferred to Greg Robinson Jr's name.

On November 8, 2012 Det Tim Rowe served a narcotics search warrant at Gregory Robinson's house at 1014 W End after receiving information Gregory Robinson and Donamitris Robinson were selling crack cocaine from the residence. Officers arrived at approximately 0630hrs that morning and found crack cocaine in the residence but Gregory Robinson was gone. Gregory Robinson was not located and was never questioned about this incident, and thus he was never charged. Det Rowe said the house was clearly set up as a "drug house". There was little furniture in the residence and there was large pit bull tied up out front.

A check of Gregory Robinson criminal history shows in May 1999, Gregory Robinson pled guilty to 2 counts of Distribution of a Controlled Substance near a School and he received a 10 year sentence. Then in August 2007, Gregory Robinson pled guilty again to Distribution of a Controlled Substance, for a total of 3 counts and received a 15 year sentence.

I contacted the Moberly Water Office and confirmed the water service at 518 Porter St. is in the name of Gregory Robinson.

I also noted prior to me getting this information, I would note while on routine patrol the last two months, the lack of activity at the 1014 W End and at the "Sugar Shack". The "Sugar Shack" is a nick name for small garage located at 1015 W End Pl and is currently owned by Greg Robinson Jr; the son of Gregory Robinson.

The "Sugar Shack" has a long history of place where people (mostly with criminal histories) would get together and gamble and also sell illegal drugs from the garage. In July 2006, Det David Johnson and I went to the "Sugar Shack" and served a search warrant and arrested Alex Cason and Richard Payne for Possession of Controlled Substance (Crack Cocaine) was found, along with illegal gambling machines.

On July 30, 2013 Det Rowe observed a Red in Color Mercury Mountaineer parked at 518 Porter Street. The Missouri License number was SD5B2U, which checks to Dorothy Seiler of 611 Cleveland. A check of Department records revealed, we received a call on June 24, 2013 from Dorothy Seiler and her boyfriend, Maurice Antonio Jackson. Jackson thought his vehicle might have been shot and he also mentioned he has problems with Princess Midgyett.

A check of Maurice Jackson's criminal history revealed he has prior convictions for drug sales. September 2005, Jackson pled guilty to Felony Possession of Controlled Substance and received a 15 year sentence. In September 2006, Jackson pled guilty to Distribution of a Controlled Substance and received another 15 year sentence. In December 2008,

Jackson pled guilty to Distribution of a Controlled Substance and Distribution of a Controlled Substance near Government Housing. A check of Probation and Parole records shows Maurice Jackson is currently on Field Supervision by Officer Andrew Morris and is residing at 611 Cleveland, Moberly MO.

On July 30, 2013 I was contacted by Det David Johnson with the North Missouri Drug Task Force. Det Johnson stated he had reliable confidential source that saw an "8 ball" of Crack Cocaine and large amount of cash at 518 Porter St. in the last 30 days.

As an experienced and trained investigator I have reason to believe, based upon my investigation the crimes(s) Distribution of a Controlled Substance, RSMo statutes 195.211 and Possession of a Controlled Substance, RSMo statute 195.202 Maintaining a Public Nuisance RSMO 195.130 have been committed and that evidence of such criminal activity is Currently contained within the above-described property currently in the possession of Gregory Robinson Sr. In light of concerns described above, this Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve data that may be contained within cellular phones described herein, including password-defeating tools and techniques.

Additionally, in light of concerns described, this Affiant requests permission to have any storage devices and/or computer-related evidence transported out-of-county as necessary in the process of conducting analysis on said evidence, to involve the use of non-sworn personnel in activities related to the acquisition and analysis of said evidence, and to conduct analysis of said evidence beyond the deadline date for the filing of a return of any search warrant issued based upon this application.

The search of Robinson's residence was executed on August 2, 2013, the day after the warrant was filed. A "Return and Inventory" signed by Arnsperger stated that he found, *inter alia*, what was believed to be cocaine, crack cocaine, and more than $2000 in cash. The State subsequently charged Robinson, as a prior and persistent drug offender, with production of a controlled substance within 2000 feet of a school and maintaining or keeping a public nuisance.

Before trial, Robinson filed a motion to suppress all of the evidence seized from his house. In his motion, he alleged that the affidavit in support of the search warrant did not contain information corroborating the reliability of one of the informants and relied on stale information from the other informant. Robinson argued that, once the confidential informants' statements were removed from the determination, the remaining information in the affidavit failed to provide probable cause to issue the warrant. He further argued that the good faith exception to the exclusionary rule should not be applied given the obvious absence of probable cause in the affidavit.

The motion to suppress was initially "submitted on application," with the search warrant and application, which included Arnsperger's affidavit, as the only evidence the circuit court considered. The court granted the motion to suppress. In its judgment, the court determined that Arnsperger's affidavit failed to provide probable cause because it did "not set forth facts to believe that the evidence sought would be found in [Robinson's] home at the time the search warrant was issued" in violation of Robinson's constitutional rights. The court faulted the affidavit for relying on stale information, for not setting out a specific time and place at

which the informants observed drug trafficking, for failing to state that the first informant personally observed Robinson's possessing the drugs, and for not stating facts supporting Arnsperger's statement that the first informant was reliable. After finding that the affidavit failed to provide probable cause, the court further found that the good faith exception to the warrant requirement was not applicable because the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable. The court also found that the good faith exception should not be applied because the affidavit demonstrated "systemic negligence in regard to the careless preparation of warrant affidavits, which is a recurring problem of law enforcement of this State."

On appeal, we agreed with the circuit court that the affidavit did not provide probable cause because the warrant did not include sufficient information to corroborate the reliability of the first informant, in that Arnsperger did not aver to information supporting his conclusion that the informant was reliable or had personally observed any of the drug activity. *State v. Robinson*, 454 S.W.3d 428, 439 (Mo. App. 2015) ("*Robinson I*"). We also found that the second informant's information was not specific and was stale. *Id.* at 440-41. Additionally, we found that the remaining reported information in the affidavit was "as indicative of innocence as it [wa]s of guilt." *Id.* at 441.

Nevertheless, we reversed the court's decision to suppress because we found that, "based upon the record established to this point in the proceedings," the good faith exception to the warrant requirement should be applied. *Id.* at 444. We rejected the circuit court's finding that the warrant

was so facially lacking in indicia of probable cause that an officer would know not to rely on it despite the issuing court's authorization. *Id.* at 443. Likewise, we rejected the court's finding that the record in this case "demonstrates systemic negligence in regard to the careless preparation of warrant affidavits," holding that such a finding was "utterly without support in the record." *Id.*

On remand, Robinson filed another motion to quash the search warrant and to suppress evidence ("second motion to suppress"). At Robinson's request, the court took judicial notice of Arnsperger's deposition, which Robinson had taken after our opinion in *Robinson I*.[3] In his deposition, Arnsperger testified that he had received extensive training as to how to prepare search warrants prior to preparing the affidavit in this case. Nevertheless, he admitted that the statement provided by the first informant did not give rise to a finding of probable cause. He further admitted that he did not provide any indicia of the first informant's reliability within the application in support of the search warrant, even though he knew that a factual basis for an informant's reliability must be contained within an application for a search warrant at the time the application is completed.

With regard to the second informant in the search warrant affidavit, Arnsperger admitted in his deposition that the information provided by this second informant, *i.e.*, that he/she had seen an "8 ball" of crack cocaine at Robinson's residence "sometime within the last 30 days," was not, in and of itself, timely to justify application for a search warrant. Arnsperger testified that he knew of the timeliness

---

3. The State did not object to the court's consideration of the deposition as evidence in support of the motion to suppress and relied upon it to support its own arguments as to why the motion should be denied.

requirement as it pertained to search warrants, specifically, that the facts presented in the application for the search warrant must be sufficient to justify a conclusion that the items sought were probably on the premises to be searched at the time the warrant is issued. In this case, Arnsperger both applied for the search warrant and was also the officer who served the search warrant in question.

■ The court also took judicial notice, at Robinson's request, of search warrant affidavits that Arnsperger had prepared in two other cases around the same time that he prepared the *Robinson* affidavit on July 31, 2013.[4] The first affidavit was in *State v. Lucas*, which Arnsperger prepared on July 24, 2013. In the affidavit in *Lucas*, Arnsperger sought a warrant to search Roy Lucas's home. Arnsperger cited information he was given six days earlier from a "concerned citizen" about a "substantial amount of both vehicle and foot traffic that comes and goes at all hours of day and night" at Lucas's home and that the "visitors" bring duffle bags with them. The concerned citizen named a couple of the people seen at Lucas's home and took pictures of the license plates of the vehicles at the residence. Arnsperger averred that he used this information to discover that one of the visitors had a recent drug conviction, another visitor had a prior drug arrest, the owner of one of the cars had a seven-year old drug conviction, and another car owner had no drug convictions or arrests. Arnsperger further averred that Lucas was present at an unrelated search warrant execution at another home several months earlier and admitted that he was a methamphetamine user; however, no charges were filed against him at that time. The court in the *Lucas* case granted Lucas's motion to suppress evidence ob-

tained during the search due to the lack of probable cause in this affidavit.

The second affidavit that the court took judicial notice of was in *State v. Head*, which Arnsperger prepared on May 31, 2013. In that affidavit, Arnsperger sought a warrant to search Amy Head's residence. Arnsperger alleged that, 15 days earlier, a concerned citizen informed him about "excessive vehicle and foot traffic coming and going from the residence." The property manager of the subdivision also contacted Arnsperger and told him that two months earlier, he, too, noticed a lot of vehicle and foot traffic coming and going from the same residence. One month earlier, the property manager saw "a couple of 'black guys'" hanging out at Head's residence. The property manager told Arnsperger that he "learned" a plumber had gone into Head's home and had noticed "needle marks" on both of Head's arms. The property manager said that, two days earlier, he noticed a strong smell of marijuana when he was walking "near" the residence and saw two black males in the driveway of the residence. The property manager gave Arnsperger the license plate of a tan car that he spotted at the residence several times. Arnsperger discovered the car, which he confirmed was tan, was registered to a woman and "TOD" to the woman's daughter, who reportedly drove the car. Arnsperger alleged that the daughter had allowed two particular black males to drive the car, one of whom had a prior conviction for drug possession and another who had a prior drug arrest. Lastly, Arnsperger alleged that Head had a prior burglary arrest and that her "Black Male boyfriend" had arrests for controlled substances. Robinson asserted that the affidavits in *Lucas* and *Head* contained deficien-

4. A court may take judicial notice of its records from other cases when the cases are closely interwoven. *State v. Flores*, 437 S.W.3d 779, 787 n.7 (Mo. App. 2014).

cies similar to those found in the affidavit in his case.

The State did not offer any evidence.[5] The only evidence favorable to the State that the court had when it ruled on Robinson's second motion to suppress was Arnsperger's deposition testimony that he had been in law enforcement for 21 years; that he had made mistakes in law enforcement, on police reports, and in search warrant applications before; that he did not intend to mislead the court by concealing any details about the first confidential informant's reliability; and that his failure to put in details about the first confidential informant's reliability was an oversight and was not intentional. Arnsperger also testified that he believed the affidavit in *Lucas* was different from the affidavit in this case because the information cited in the *Lucas* affidavit was from a concerned citizen and not a confidential informant.

Based upon this evidence, the circuit court granted Robinson's motion to suppress. The court found that Arnsperger knew that the factual basis of an informant's reliability must be contained within the search warrant application but failed to include it with regard to the first confidential informant in the affidavit in this case. Likewise, the court found that Arnsperger knew that the second confidential informant's statement in the affidavit did not satisfy the timeliness requirement.

The court found that the good faith exception to the exclusionary rule should not be applied because the deficiencies in the *Robinson* affidavit were the result of systemic negligence in regard to careless preparation of warrant affidavits, as evidenced by the fact that Arnsperger's affidavits in *Lucas* and *Head* contained similar deficiencies, specifically, insufficient corroboration or reliability information,

staleness, and "[g]uilt by association/guilty automobiles" information.

The court found that the *Lucas* affidavit was deficient because it provided no substantial basis for crediting the statements provided to Arnsperger by his source, as there were no allegations as to the source's having provided reliable information in the past and no information to corroborate the source's statements. The court further found that the source's six-day-old information was stale because Arnsperger was not apprised of potential drug activity at the residence by any other source during that six-day period. Lastly, the court found that Arnsperger attempted to bolster his lack of corroboration by listing the criminal histories of registered owners of cars in the vicinity of Lucas's house and listing arrests of associates who may or may not have any connection to the case, even though the criminal histories of some of these persons showed subsequently dismissed charges or acquittals.

The court found that the *Head* affidavit was deficient because there was no substantial basis for crediting as reliable the statements provided to Arnsperger from his source. The court noted that the only corroboration was in the nature of the ownership of the property, and that vague descriptions of "black guys" hanging out and driving a certain vehicle were insufficient to constitute corroboration. Also, the court found that the property manager's hearsay statements from the property owner that a plumber told her about seeing needle tracks on Head's arms were insufficient and exemplified the extent to which Arnsperger "will go to try and tip the scales into a probable cause finding by a magistrate." As for timeliness of information, the court found that the property

---

5. The docket sheet indicates that no evidentiary hearing was held. The only transcript in the legal file is of a hearing during which arguments of counsel were presented.

manager's information about excessive vehicle and foot traffic two months earlier was stale. Lastly, the court found that, aside from Arnsperger's corroborating that the vehicle seen at the residence was tan, his other attempts at corroboration through "guilt by association/guilty automobiles" were merely "attempts to link vehicles and the owners/drivers to criminal activity within the residence without a nexus." In particular, the court noted that Arnsperger cited "other reports" from unnamed sources regarding potential drivers of the tan car and the prior arrests and convictions of those potential drivers, but Arnsperger never placed any of these potential drivers in Head's residence.

The court determined that Arnsperger's affidavits in *Lucas*, *Head*, and this case demonstrated systemic negligence in the careless preparation of warrant affidavits because they contained similar deficiencies and Arnsperger admitted, at least with regard to the affidavit in this case, that he was aware of those deficiencies but submitted the affidavit anyway. The court further determined that Arnsperger's "failure ... to include a specific time, or appropriate time frame when the confidential informants observed the illegal activity or contraband in his affidavit for a search warrant is not isolated or infrequent, but appears to [be] a recurring problem for him." Consequently, the court refused to apply the good faith exception to the exclusionary rule and granted Robinson's second motion to suppress the evidence obtained in the search. The State filed this interlocutory appeal.

### Standard of Review

We will reverse the court's ruling on the motion to suppress only if we find that it is clearly erroneous. *State v. McNeely*, 358 S.W.3d 65, 68 (Mo. banc 2012). To find that the court's ruling is clearly erroneous, we must be " 'left with the definite and firm conviction that a mistake has been made.' " *Robinson*, 454 S.W.3d at 436 (quoting *State v. Letica*, 356 S.W.3d 157, 164 (Mo. banc 2011)).

In reviewing the court's ruling, we consider all evidence and reasonable inferences therefrom in the light most favorable to the court's order and defer to the court's factual findings and credibility determinations. *State v. Stoebe*, 406 S.W.3d 509, 515 (Mo. App. 2013). If the court's ruling "is plausible in light of the record viewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (internal quotation marks and citations omitted). The circuit court was free to disbelieve any evidence favorable to the State, even if uncontradicted. *Id.*

### Analysis

In its sole point on appeal, the State contends the circuit court clearly erred in granting Robinson's motion to suppress because the evidence obtained pursuant to the invalidated search warrant was admissible under the good faith exception to the warrant requirement. Specifically, the State argues that the evidence did not support the court's conclusion that the deficiencies in the search warrant were the result of systemic negligence warranting exclusion.

[redacted] The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Davis v. United States*, 564 U.S. 229, 236, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Because the Fourth Amendment "says nothing about suppressing evidence obtained in violation of this command," the United States Supreme Court created the exclusionary rule to " 'compel respect for

the constitutional guaranty.'" *Id.* (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). The exclusionary rule provides that "evidence obtained as a direct result of an unlawful search or seizure is considered 'fruit of the poisonous tree' and is inadmissible at trial." *State v. Lucas*, 452 S.W.3d 641, 642-43 (Mo. App. 2014) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

The purpose of the exclusionary rule is not to "'redress the injury' occasioned by an unconstitutional search" but, rather, "to deter future Fourth Amendment violations." *Davis*, 564 U.S. at 236-37, 131 S.Ct. 2419 (quoting *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). The Supreme Court has stated that, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs" of ignoring reliable evidence, suppressing the truth, and setting "the criminal loose in the community without punishment." *Id.* at 237, 131 S.Ct. 2419.

In determining whether to apply the exclusionary rule, courts "must consider the actions of all the police officers involved." *Herring v. United States*, 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). "The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id.* at 143, 129 S.Ct. 695. Indeed, "'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 911, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Courts should suppress evidence "'only if it can be said that the law enforcement officer had knowl-

edge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Id.* (citations omitted).

The good faith exception to the warrant requirement will not be applied if the affiant provides information he knows or reasonably should know is false; the issuing judge wholly abandons his or her judicial role; the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Robinson*, 454 S.W.3d at 442. Essentially, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144, 129 S.Ct. 695; *State v. Carrawell*, 481 S.W.3d 833, 846 (Mo. banc 2016). "An error that arises from nonrecurring and attenuated negligence" is insufficient to warrant exclusion. *Herring*, 555 U.S. at 144, 129 S.Ct. 695. Rather, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*

The State first asserts in its point relied on that the law of the case doctrine precludes the court's conclusion that the good faith exception should not be applied in this case. Specifically, the State argues that, pursuant to our opinion in *Robinson I*, there is nothing in the contents of the search warrant to support the court's decision not to apply the good faith exception to the exclusionary rule. 454 S.W.3d at 443. In rejecting Robinson's claim that the affidavit was so lacking in probable cause that it was unreasonable for Arnsperger to rely on it, we found that the deficiencies in the two source's statements were troublesome

and should have alerted the issuing judge to require more details in the affidavit. *Id.* However, we found that the sources, along with the police efforts to confirm the address, search his criminal history, and conduct surveillance, indicated that the police executed the warrant in good faith. *Id.* We concluded that the error rested not on the officer who executed the warrant but, on the issuing court. *Id.*

These findings from *Robinson I* pertained only to whether the good faith exception was inapplicable based on Arnsperger's act of relying upon the deficient affidavit—not his act of preparing the deficient affidavit. On the issue of his preparing the deficient affidavit, we stated only that we did not have any information from which to determine if Arnsperger's lack of details was due to laziness, sloppiness, poor communication in a rush to obtain the warrant, or whether he was "merely stringing together small bits of information in an attempt to obtain a warrant for which he was aware probable cause was lacking." *Id.* The law of the case from our prior opinion was that it was not unreasonable for Arnsperger to rely upon the deficient affidavit [6] and that the error in relying upon the deficient affidavit rested on the issuing court and not on Arnsperger. Whether or not the good faith exception should be applied in light of Arnsperger's act of preparing the deficient affidavit remained an open question after *Robinson I. See id.* at 443-44. Further, our holding in *Robinson I* was specifically limited by our language in the conclusion of the opinion that it was "based upon the record established to this point in the proceedings," and the cause was remanded for further

proceedings. *Id.* at 444. A circuit court's ruling on a motion to suppress is interlocutory and may be changed up to and during trial. *State v. Allison,* 326 S.W.3d 81, 87 (Mo. App. 2010). We held in *Robinson I* that the record before us at that time did not support the circuit court's finding of systemic negligence; this did not preclude the introduction of new evidentiary support for this proposition under the later-filed motion to suppress.

The issue that Robinson asserted in his second motion to suppress was the application of the good faith exception and whether systemic negligence was present. In the remainder of its point relied on, the State contends that the evidence that Robinson offered to support this assertion was insufficient to establish that the deficiencies in the search warrant in this case were the result of systemic negligence. However, absent from the State's argument and, indeed, absent from the State's case at trial, is any evidence showing why the good faith exception to the exclusionary rule should be applied in this case.

It was the State's burden to offer such evidence. Section 542.296.6, RSMo 2000, provides that, when a motion to suppress is filed, "[t]he burden of going forward with the evidence and the risk of nonpersuasion *shall be upon the state* to show by a preponderance of the evidence that the motion to suppress should be overruled." (Emphasis added.) Likewise, our Supreme Court has repeatedly stated that the State bears both the burden of producing evidence and the risk of nonpersuasion in a suppression proceeding. *See, e.g., Carrawell,* 481 S.W.3d at 837. We affirmed the court's ruling that Arnsper-

---

6. In his respondent's brief, Robinson asks us to revisit this issue and find that the affidavit was so lacking in probable cause as to render official belief in its existence unreasonable. Because we decided this issue in the prior

appeal, the doctrine of law of the case precludes its re-examination. *St. Louis Cty. v. State,* 482 S.W.3d 842, 847-48 (Mo. App. 2016).

ger's affidavit in this case lacked probable cause in *Robinson I.* Therefore, to meet its burden of showing that Robinson's second motion to suppress should be overruled, the State was obligated to produce evidence to persuade the court that the good faith exception to the exclusionary rule should be applied.

The State, however, offered *no* evidence in opposition to Robinson's second motion to suppress. Robinson supported his second motion to suppress with Arnsperger's admissions in his deposition testimony that he was aware of the multiple deficiencies in the *Robinson* affidavit but submitted the affidavit anyway. Robinson also offered the *Lucas* and *Head* affidavits, which he asserted contained similar deficiencies. Indeed, the *Lucas* affidavit was found to be so lacking in probable cause that it, too, resulted in the granting of a motion to suppress. The State presented no evidence showing Arnsperger's good faith to refute Robinson's contention of systemic negligence. The only evidence before the court that was favorable to the State was Arnsperger's deposition testimony that his mistakes in the *Robinson* affidavit were merely an "oversight" and that the type of informant in the *Lucas* affidavit was different from the informants in the *Robinson* affidavit. The court was not required to accept this testimony, and we must defer to its decision not to. *Stoebe*, 406 S.W.3d at 514-15.

In the record before the court, one hundred percent of the search warrant affidavits prepared by Arnsperger were deficient, and by his own admissions, Arnsperger was aware of the deficiencies in the applications but failed to prepare them properly. The State did not meet its burden of production or persuasion to show, by a preponderance of the evidence, why Robinson's motion to suppress should be overruled. Therefore, we cannot say that the circuit court clearly erred in granting Robinson's second motion to suppress. The State's point on appeal is denied.

### CONCLUSION

The judgment is affirmed.

All Concur.